UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

-----------------------------------------------------------------------X

IN RE: NATIONAL CREDIT UNION ADMINISTRATION
BOARD, in its capacity as conservator of
Jackson Area Federal Credit Union,

Plaintiff,

vs LEIGH BRIDGES and CHAD BRIDGES, DEFENDANTS
-----------------------------------------------------------------------X

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

MAY 1 4 2026

ARTHUR JOHNSTON
BY _____ DEPUTY

**FILED UNDER SEAL**
Civil Action
Matter No.:

## CONFIDENTIAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S *URGENT AND NECESSITOUS* MOTION TO FILE DOCUMENTS UNDER SEAL

The National Credit Union Administration Board ("NCUAB"), acting in its capacity as conservator of Jackson Area Federal Credit Union ("JAFCU"), submits this confidential memorandum in support of its motion to file documents under seal.

The motion to file under seal, and the motion for a temporary restraining order ("TRO") and preliminary attachment of accounts and assets, are necessitated by what appears to be at least a **$95 million dollar** deficit in the financials of JAFCU. JAFCU's president and CEO, Leigh Bridges, has admitted to misappropriating JAFCU funds for her own personal benefit and to using false entries on the financials of JAFCU to conceal such misappropriation. Preliminary analysis shows false entries of $51 million, and luxurious expenditures benefiting Leigh Bridges and her husband, Chad Bridges, in the amount of at least $22 million. Leigh Bridges has stated that millions of dollars of the misappropriated funds are in personal accounts outside of JAFCU. Leigh and Chad Bridges possess multiple properties, including a beachfront condominium, as well as luxury vehicles, ornate furnishings, and copious amounts of high-end handbags and jewelry. The possible dissipation or transfer of millions of dollars of assets purchased with funds misappropriated from JAFCU necessitates this motion and the issuance of a TRO under seal.

Whether a TRO motion and the resulting order are filed under seal is determined by reference to Fed. R. Civ. P. 65(b)(1). *See Perez v. Bruister*, No. 3:13-CV-1001-DPJ-FKB, 2015 WL 237126, at *2 (S.D. Miss. Jan. 16, 2015). A TRO may issue without notice to an adverse party if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). If the NCUAB moves for injunctive relief, "Rule 65 of the Federal Rules of Civil Procedure shall apply . . . without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate." 12 U.S.C. § 1787(b)(2)(H)(i). As such, the NCUAB should not be required to show "immediate and irreparable injury" for purposes of Rule 65(b)(1).

The certification of Alysson Mills accompanying the motion for TRO explains the likely harm in the event notice is given to Leigh and Chad Bridges and explains why notice should not be required. Leigh Bridges has admitted to having millions of dollars in personal accounts and the evidence supporting the motion for TRO and preliminary attachment shows that she likely possesses highly-mobile, highly-valuable items such as jewelry and handbags. *See* Mills cert. As explained in that motion, most of the funds and assets are likely subject to a constructive trust. *See* Mills cert. Given the ease of transferring funds from financial accounts, issuing the TRO without notice will permit the NCUAB to get assurances from financial institutions where she is believed to have accounts that they will not transfer funds. *See* Mills cert. Although most individuals would undoubtedly respect and obey court orders, such as TROs, individuals who may be charged with significant federal crimes may be undeterred. *Cf. Perez*, 2015 WL 237126, at *2 (entering TRO without notice given the likelihood "Defendants have already exhibited a

2

willingness to frustrate the Court's judgments"). Issuance of a TRO without notice is thus important to avoid significant harm through the transfer or dissipation of funds in financial accounts.

Issuance of a TRO without notice is also important to avoid significant harm through the transfer or dissipation of property. Until the NCUAB can inventory the property possessed by Leigh and Chad Bridges, neither it nor the Court can know whether property has been dissipated in violation of the Court's order. Given that Leigh Bridges is believed to have spent millions of dollars on luxury items, as detailed in the memorandum and declarations supporting the motion for a TRO and preliminary attachment, the NCUAB believes that there are many valuable items of which it is unaware. *See* Mills cert. For those reasons, the NCUA intends to file a motion seeking permission to inventory and/or take into custody the personal property of Leigh and Chad Bridges. Issuance of a TRO without notice will permit the NCUAB time to prepare and file that motion.

It will also permit the NCUAB to prepare for filing *lis pendens* to protect its interest in the real property owned by Leigh and Chad Bridges. *See* Mills cert. Lastly, it will allow NCUAB to investigate additional assets and accounts of Leigh and Chad Bridges. The NCUAB is continuously learning new information concerning their accounts and assets. *See* Mills cert. Additional time will be helpful in that regard. For all of these reasons, issuance of a TRO without notice is proper in accordance with Fed. R. Civ. P. 65(b)(1). Therefore, the NCUAB requests that the motion for TRO and preliminary attachment, the supporting documents, and the Court order regarding that motion, all be filed under seal.

The NCUAB is requesting that the documents be sealed "from any access by the public and the litigants' counsel[.]" Local Rule 79(e)(3)(B)(1). Because even the public notice that the

3

NCUAB is taking legal action with respect to JAFCU could put Leigh and Chad Bridges on notice that a lawsuit will be coming, the NCUAB asks for relief from the non-confidential memorandum and the notice requirements of Local Rule 79(e). Such relief is also appropriate given the temporary nature of the filing under seal. Consistent with Fed. R. Civ. P. 65(b)(2), a TRO can only last up to fourteen days. The NCUAB requests that the documents remain under seal until Leigh and Chad Bridges are served with the TRO, which will be within the fourteen days unless the time is extended by the Court. The limited time for which the documents will be out of the public view, and the importance of the interests addressed in the motion for TRO and preliminary attachment, justify this motion and for relief from the requirement to file public documents associated with the request to file under seal.

Respectfully submitted,

May 14, 2026

Alysson Mills, Mississippi Bar No. 102861

650 Poydras Street Suite 1525
New Orleans, Louisiana 70130
t/f: 504-586-5253
alysson@alyssonmills.com

*Counsel for Plaintiff*
NATIONAL CREDIT UNION ADMINISTRATION BOARD,
acting in its capacity as conservator of
JACKSON AREA FEDERAL CREDIT UNION