| | |
|---|---|
| *In the Matter of Jackson Area Federal Credit Union, Charter No 8445, Jackson Mississippi* | Case No. 26-0023-SR |

## DECLARATION OF RICK HILL

I, Rick Hill, declare pursuant to 28 U.S.C. § 1746 the following to be a true and correct:

1. I was a member of the board of directors at Jackson Area Federal Credit Union (JAFCU or "credit union") for more than 30 years. The credit union headquarters is located at 5675 Highway 18 West, Jackson, MS 39209. The board of directors was dissolved when the National Credit Union Administration (NCUA or "agency") took control of the credit union on May 6, 2026, by placing it into conservatorship.

2. The NCUA is the federal agency which supervises and regulates federally insured credit unions. As a member of JAFCU's board, I have interacted with NCUA examiners and other NCUA personnel on many occasions.

3. The NCUA requires credit unions, including JAFCU, to file quarterly Call Reports which reflect the finances of the credit union. These Call Reports are composed and authorized by senior staff at each credit union. Additionally, the NCUA sends examiners onsite to the credit union regularly to review records and ensure compliance with federal law. During these examinations, credit union staff provide additional statements and records for review.

4. On April 16, 2026, board chairman John Anderson called me to tell me he had met with NCUA examiners the previous day. The examiners had informed Mr. Anderson that there was a problem with JAFCU's financial reporting to the agency. Those examiners stated that a corporate credit union doing business with JAFCU, Corporate America Credit Union ("CACU"),

had informed the agency that there was irregular wire activity on credit union accounts. CACU provides various services to JAFCU, including processing deposits, processing Automated Clearing House ("ACH") transactions, and processing domestic and international wire transactions. Examiner Timothy O'Quinn explained the missing funds amounted to $94 million.

5. On behalf of JAFCU, president and CEO, Leigh Bridges prepared and signed off on financial records conveyed to the NCUA. Further, she presented financial statements and made corresponding representations to the board of directors regarding the credit union's financial position. She told the board of directors that the credit union was well capitalized and doing well.

6. After being informed of these irregularities, members of the board of directors and supervisory committee reviewed statements provided by JAFCU to the NCUA and compared those to statements obtained directly from CACU. When reviewed, there were many inconsistencies between the two statements. These inconsistencies prompted Chairman Anderson to set up a meeting with Bridges regarding the conflicting financial statements.

7. On April 17th, 2026, at approximately 10:00 AM, my fellow board member, John Anderson, and I met with Bridges at the credit union to discuss the inconsistencies with the financial statements. Also in attendance were NCUA examiners Tim O'Quinn and Damien Baylor. At the beginning of the meeting, Chairman Anderson informed her that based on the conflicting statements from JAFCU and CACU, the board of directors had decided to suspend her with pay. Examiner O'Quinn also informed her that there appeared to be a $94 million shortfall between statements she had produced and those received from CACU.

8. Examiner O'Quinn provided copies of the two versions of the statements. Upon review, she initially stated that she was unaware of what might have caused the problem. Examiner O'Quinn then explained the automated clearing house ("ACH") deposits on her own

account were the ones that did not match up to the CACU-provided record. She said she did not know what happened. Examiner O'Quinn then asked if she couldn't explain the records, who else at the credit union could.

9. After a significant pause in the conversation, Bridges began to give a more truthful explanation of what had in fact occurred. Bridges admitted that she was responsible for the inconsistencies on the statements.

10. Following her admission of misappropriating funds from JAFCU, she offered to make the credit union whole by paying back the funds she had fraudulently taken.

11. At roughly 11:25 AM we adjourned the discussion, collected her JAFCU keys and laptops, and escorted her from the building. I have not spoken with Bridges since the conclusion of that meeting.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 11, 2026.

Rick Hill
Member of the Board of Directors
Jackson Area Federal Credit Union

3