UNITED STATES OF AMERICA
NATIONAL CREDIT UNION ADMINISTRATION
ALEXANDRIA, VA 22314

| | |
|---|---|
| *In the Matter of Jackson Area Federal Credit Union, Charter No 8445, Jackson Mississippi* | Case No. 26-0023-SR |

## DECLARATION OF DAMIEN BAYLOR

I, Damien Baylor, declare pursuant to 28 U.S.C. § 1746 the following to be a true and correct:

1.      I am a credit union examiner with the National Credit Union Administration ("NCUA"). I have worked for the agency in this capacity for 9 years. The NCUA is the federal agency which supervises and regulates federally insured credit unions.

2.      One such federally-insured credit union under the NCUA's purview is Jackson Area Federal Credit Union (JAFCU or "credit union"). The credit union headquarters is located at 5675 Highway 18 West, Jackson, MS 39209. As a member of the NCUA's examination staff, I have been onsite to JAFCU previously.

3.      As part of its supervision, the NCUA requires credit unions, including JAFCU, to file quarterly Call Reports which reflect the finances of the credit union. These Call Reports are composed and authorized by senior staff at each credit union. Additionally, the NCUA sends examiners onsite to the credit union regularly to review records and ensure compliance with federal law. During these examinations, credit union staff provide additional statements and records for review.

4.      On April 16, 2026, NCUA supervisory examiner Tim O'Quinn informed members of the JAFCU board of directors that there was a problem with JAFCU's financial reporting to the agency. O'Quinn shared with them that a corporate credit union doing business with JAFCU,

Corporate America Credit Union ("CACU"), had informed the agency that there was suspicious activity taking place at the credit union.    CACU provides various services to JAFCU, including processing deposits, processing Automated Clearing House ("ACH") transactions, and processing domestic and international wire transactions.

5.    After being informed of these irregularities, members of the board of directors reviewed statements provided by JAFCU to the NCUA and compared those to statements obtained directly from CACU.    When reviewed, there were many inconsistencies between the two statements.  These inconsistencies prompted the board of directors to set up a meeting with JAFCU president and CEO, Leigh Bridges.

6.    On April 17th, 2026, at approximately 10:00 AM, board members, John Anderson and Rick Hill, along with myself and Tim O'Quinn, met with Bridges in a conference room at the credit union to discuss the inconsistencies with the financial statements.  At the beginning of the meeting, the board members informed her that based on the conflicting statements from JAFCU and CACU, the board of directors had decided to suspend her with pay.  They also informed her that there appeared to be a shortfall between statements she had produced and those received from CACU.

7.    She was provided copies of the two versions of the statements.  Upon review, she initially stated that she was unaware of what might have caused the problem.  She was also asked if other employees at the credit union would have access to create fictitious records like we had discovered and she said, "No."

8.    After a significant pause in the conversation, Bridges began to give a more truthful explanation of what had in fact occurred.  Bridges admitted that for roughly the last six years she

2

has been transferring funds from the JAFCU general ledger to her personal accounts so that she would have adequate funds to make extensive personal purchases.

9.     Following her admission of misappropriating funds from JAFCU, she offered to make the credit union whole by paying back the funds she had fraudulently taken. She asserted that the amount missing was less than $94 million and that she had enough material assets to sell and pay it all back.

10.     At roughly 11:25 AM the board adjourned the discussion, collected her JAFCU keys and laptops, and escorted her from the building. I have not spoken with Bridges since the conclusion of that meeting.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May _11_, 2026.

Damien Baylor
Credit Union Examiner
National Credit Union Administration

3