Case 3:26-cv-00343-DPJ-RPM   Document 12-6   Filed 06/04/26   Page 1 of 4

| | |
|---|---|
| *In the Matter of Jackson Area Federal Credit Union, Charter No 8445, Jackson Mississippi* | Case No. 26-0023-SR |

## DECLARATION OF TIMOTHY O'QUINN

I, Timothy O'Quinn, declare pursuant to 28 U.S.C. § 1746 the following to be a true and correct:

1. I am a supervisory credit union examiner with the National Credit Union Administration ("NCUA"). I have worked for the agency in this capacity for 14 years. I have worked for the NCUA in various examination-focused roles for more than 35 years. The NCUA is the federal agency which supervises and regulates federally insured credit unions.

2. One such federally-insured credit union under the NCUA's purview is Jackson Area Federal Credit Union (JAFCU or "credit union"). The credit union headquarters is located at 5675 Highway 18 West, Jackson, MS 39209. As a member of the NCUA's examination staff, I have been onsite to JAFCU several times previously.

3. As part of its supervision, the NCUA requires credit unions, including JAFCU, to file quarterly Call Reports which reflect the finances of the credit union. These Call Reports are composed and authorized by senior staff at each credit union. Additionally, the NCUA sends examiners onsite to the credit union regularly to review records and ensure compliance with federal law. During these examinations, credit union staff provide additional statements and records for review.

4. On April 16, 2026, I informed members of the JAFCU board of directors that there was a problem with JAFCU's financial reporting to the agency. My colleagues and I shared with

them that a corporate credit union doing business with JAFCU, Corporate America Credit Union ("CACU"), had informed the agency that of suspicious activity taking place at the credit union. CACU provides various services to JAFCU, including processing deposits, processing Automated Clearing House ("ACH") transactions, and processing domestic and international wire transactions.

5. After being informed of these irregularities, members of the board of directors reviewed statements provided by JAFCU to the NCUA and compared those to statements obtained directly from CACU. When reviewed, there were many inconsistencies between the two statements. These inconsistencies prompted the board of directors to set up a meeting with JAFCU president and CEO, Leigh Bridges, regarding the conflicting financial statements.

6. On April 17th, 2026, at approximately 10:00 AM, board members, John Anderson and Rick Hill, along with myself and fellow NCUA examiner, Damien Baylor, met with Bridges in a conference room at the credit union. At the beginning of the meeting, the board members informed her that based on the conflicting statements from JAFCU and CACU, the board of directors had decided to suspend her with pay. She was also informed that there appeared to be a $94 million shortfall between statements she had produced to the NCUA and those received from CACU.

7. She was provided copies of the two versions of the statements. Upon review, she initially stated that she was unaware of what might have caused the problem. She was then asked if other employees at the credit union would have access to create fictitious records like we had discovered and she said, "No."

8. After a significant pause in the conversation, Bridges began to give a more truthful explanation of what had occurred. Bridges admitted that for roughly the last six years she has been

transferring funds from the JAFCU general ledger to her personal accounts so that she would have adequate funds to make extensive personal purchases, including expensive jewelry and handbags. She explained that she concealed the transfers by manually entering deceptive but plausible titles for the ACH deposits into her account. This was done so that her account would appear to be receiving legitimate funds. She would also manually alter the monthly month end corporate reconciliation to show items in transit for the missing funds and would then alter figures on the CACU statement to show the items clearing properly.

9. When asked if she had an idea of the total amount she had manipulated through this method and she said, "No." She also denied manipulating other member accounts at the credit union and fraudulently removing funds through other methods.

10. Following her admission of misappropriating funds from JAFCU, she offered to make the credit union whole by paying back the funds she had fraudulently taken. She stated she could return "multiple millions" from her bank accounts at other financial institutions, including American Express, Acorns, and Chase. Further, she offered to sell everything she owned, other than her homes, in order to pay back the amount she owes. She asserted that the amount missing was less than $94 million and that she had enough material assets to sell and pay it all back.

11. At roughly 11:25 AM the board adjourned the discussion, collected her JAFCU keys and laptops, and escorted her from the building. I have not spoken with Bridges since the conclusion of that meeting.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 11, 2026.

3

Timothy O'Quinn
Supervisory Credit Union Examiner
National Credit Union Administration