UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION
------------------------------------------------------------------------X

NATIONAL CREDIT UNION ADMINISTRATION
BOARD, in its capacity as conservator of
Jackson Area Federal Credit Union,

       Plaintiff,

                Case No.: 3:26-cv-343-DPJ-RPM
    v.              Hon. Daniel P. Jordan
                Hon. Robert P. Myers, Jr.
LEIGH BRIDGES, CHAD BRIDGES, and
TINA FUNEZ,

       Defendants.

------------------------------------------------------------------------X

## AMENDED COMPLAINT

Plaintiff National Credit Union Administration Board ("NCUAB"), in its capacity as

the conservator of Jackson Area Federal Credit Union ("JAFCU"), by and through undersigned

counsel, brings claims against Defendant Leigh Bridges, the former president and chief executive

officer of JAFCU, seeking money judgments for two counts of fraud, and counts of conversion,

breach of fiduciary duty, violation of the federal credit union director officer liability statute, and

for the unwinding of fraudulent transfers or, alternatively, a money judgment in the amount of

such fraudulent transfers.  The NCUAB also brings claims against Defendant Chad Bridges, the

husband of Leigh Bridges, seeking the unwinding of fraudulent transfers to him or, alternatively,

a money judgment in the amount of such fraudulent transfers, and against Defendant Tina Funez,

a former JAFCU branch manager and friend of Leigh Bridges, seeking to unwind fraudulent

transfers from Leigh Bridges to her or, alternatively, a money judgment in the amount of such

fraudulent transfers.  The NCUAB brings claims against Leigh Bridges, Chad Bridges, and Tina

Funez (collectively "Defendants") for the disgorgement of the misappropriated funds underlying those causes of action through the enforcement of equitable liens on property held in constructive trust for the NCUAB and an order pursuant to 12 U.S.C. § 1787(b)(2)(G), enjoining the Defendants from transferring property and placing a trusteeship on Defendants' property within the jurisdiction of this Court to satisfy the money judgments against the Defendants.  In support of its Amended Complaint, the NCUAB alleges as follows:

**Parties, Jurisdiction, and Venue**

1.      This Court has jurisdiction over this lawsuit pursuant to 12 U.S.C. § 1789(a)(2) because the NCUAB is a party to this litigation and because the NCUAB has commenced this litigation to carry out the purposes of Subchapter II of the Federal Credit Union Act ("FCUA").

2.      The NCUAB manages the National Credit Union Administration ("NCUA"), an independent federal agency that operates under the FCUA, 12 U.S.C. 1751 *et seq.*, as amended through P.L. 116-260, enacted December 27, 2020.  Among other responsibilities, the agency is responsible for chartering and regulating federal credit unions, and federally-insured, state-chartered credit unions, and managing the National Credit Union Share Insurance Fund ("NCUSIF").  The NCUA is also authorized by federal statute to act as a conservator of financially troubled credit unions and as liquidating agent of failed credit unions.  The agency is headquartered in Alexandria, Virginia and operates nationwide.

3.      Defendant Leigh Bridges resides within the jurisdiction of this Court.

4.      Defendant Chad Bridges resides within the jurisdiction of this Court.

5.      Defendant Tina Funez resides within the jurisdiction of this Court.

6.      Defendant Leigh Bridges and Defendant Chad Bridges are married.

7.      JAFCU is a federal credit union headquartered in Jackson, Mississippi, with branches in Byram and Clinton, Mississippi.  The credit union's field of membership includes City of Jackson employees; employees of roughly 70 other businesses and organizations located in Jackson, Mississippi and Hinds County; and anyone who lives, works, worships, or attends school in Hinds County.  As of December 31, 2025, JAFCU reported total assets of $162,350,956 and equity of $14,713,241.

8.      Venue is proper in this District consistent with 28 U.S.C. § 1391(b)(2) because Defendants reside within this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

9.      On May 6, 2026, the NCUAB conserved JAFCU and appointed itself as conservator.  As conservator, the NCUAB succeeds to all rights, powers and privileges of JAFCU.  *See* 12 U.S.C. § 1787(b)(2)(A)(i).  The NCUAB's authority as conservator includes the authority to bring this lawsuit on behalf of JAFCU.

10.     The NCUAB brings this lawsuit in its capacity as conservator of JAFCU in order to recover funds for the purpose of rehabilitating JAFCU and protecting the NCUSIF.

### Defendants' Relationships with JAFCU

11.     Beginning on or about the year 2021, Leigh Bridges became the president and CEO of JAFCU.

12.     Prior to serving as president and CEO, Leigh Bridges served as CFO of JAFCU. Leigh Bridges was an employee and officer of JAFCU at all times relevant to this Amended Complaint.

13.     Leigh Bridges was responsible for preparing and signing the financial statements that JAFCU submitted to the NCUA.  She also performed account reconciliation for wire

3

transfers involving JAFCU and had the ability to initiate and authorize wire transfers on behalf of JAFCU.

14. On or about April 17, 2026, Leigh Bridges was placed on paid administrative leave pending an investigation into fraudulent Automated Clearing House (ACH) entries; significant wire transfers to Defendants' personal accounts, luxury retailers, and other companies with no business affiliation with JAFCU; and inaccurate entries on the general ledger materially misstating and overstating the amount contained within JAFCU's account with a corporate credit union doing business with JAFCU.

15. A corporate credit union is a financial institution servicing member credit unions as their financial institution, *i.e.*, "a credit union's credit union." The services that corporate credit unions typically provide to member credit unions include taking deposits, processing ACH transactions, and processing domestic and international wire transactions, among other services.

16. Leigh Bridges had share accounts with JAFCU until 2024. Chad Bridges had at least two share accounts with JAFCU during all times relevant to this Amended Complaint.

17. Tina Funez was an employee of JAFCU since 2006, and was promoted to branch manager in or about 2023. She was a friend of Leigh Bridges during all times relevant to this Amended Complaint.

**Misappropriation of JAFCU Funds**

18. Leigh Bridges caused false deposit entries to be entered into the share accounts of Leigh and Chad Bridges.

19. False deposit entries were manually entered under the transaction code "SDIT," which signifies a share deposit, and containing a description with the preface "EFT," which stands for electronic funds transfer.

4

20.    Those entries were false in that no funds were being transferred from an external source, but rather the funds were being transferred from the general ledger of JAFCU to the share accounts of Leigh and Chad Bridges.

21.    The false "EFT" transactions listed financial institutions such as Acorns Investing, JP Morgan Chase Bank, American Express, and Raymond James financial as their sources.

22.    Aggregating those transactions from the information for the share accounts of Leigh and Chad Bridges shows over $51 million dollars in false entries from the year 2015 until the present.  Accordingly, Leigh Bridges misappropriated at least $51 million dollars in funds from JAFCU.

23.    Leigh Bridges used the funds misappropriated from the general ledger of JAFCU to make extensive personal purchases for the benefit of Defendants.

24.    ACH transactions from January 1, 2025 through March 31, 2026, wire transfers from January 2021 through March 31, 2026, and check transactions from March 2019 through March 31, 2026, all show outgoing transfers from JAFCU of at least $22,453,999.67 for the benefit of Defendants, as explained in the paragraphs below.

25.    Between January 1, 2025, and March 31, 2026, Leigh Bridges made or caused to be made the transfer of $15,052,890.45 from JAFCU accounts in order to pay her personal credit card bills.  These payments include $14,452,575.08 in payments to American Express, $531,444.37 in payments to Apple Card, and $68,871.00 in payments to Chase Bank.

26.    Between December 2022 and March 2026, Leigh Bridges utilized checks drawn from a JAFCU account in the combined amount of $3,315,085.36 in order to make purchases at Brooks Collection, a luxury jewelry and handbag store in Jackson, Mississippi.

5

27.    Between July 2019 and July 2024, Leigh Bridges utilized checks drawn from a JAFCU account in the combined amount of $906,704.63 in order to make payments to Craig-Wilkinson Inc., a construction company.

28.    From July 2019 to January 2024, Leigh Bridges utilized checks drawn from a JAFCU account in the combined amount of $250,184.43 in order to make payments to Courtney Peters Interior Design.

29.    Between March 2019 and March 31, 2026, Leigh Bridges utilized checks drawn from a JAFCU account in the amount of $129,300 in order to purchase a Steinway piano.

30.    In 2019 and 2020, Leigh Bridges utilized checks drawn from a JAFCU account in the combined amount of $127,870.75 in order to purchase two vehicles from Mercedes-Benz Porsche of Jackson.

31.    Between March 2019 and March 31, 2026, Leigh Bridges utilized checks drawn from a JAFCU account in the amount of $127,390 in order to make payments to Graziela, LLC, a high-end jeweler, in Highland Park, Illinois.

32.    Between March 2019 and March 31, 2026, Leigh Bridges utilized checks drawn from a JAFCU account in the amount of $45,956.31 in order to make payments to Brown's Fine Art & Framing.

33.    Between March 2019 and March 31, 2026, Leigh Bridges utilized checks drawn from a JAFCU account in the amount of $35,885.16 in order to make payments to Independent Metal Craft, LLC.

34.    Between March 2019 and March 31, 2026, Leigh Bridges utilized a check drawn from a JAFCU account in the amount of $84,325 in order to make a payment to Cox Pools.

35.    Between March 2019 and March 31, 2026, Leigh Bridges utilized a check drawn from a JAFCU account in the amount of $80,000 in order to transfer funds to her own account at Bank Plus.

36.    In the year 2021, Leigh Bridges caused two wire transfers in the combined amount of $273,400 to be initiated from JAFCU and into her personal account with Coinbase Global, Inc.

37.    Between January 2021 and March 31, 2026, Leigh Bridges caused a wire transfer in the amount of $295,000 to be initiated from JAFCU to Joseph Gad, Inc., a high-end luxury diamond & colored gemstone jeweler located in New York, New York.

38.    On March 14, 2023, Leigh Bridges caused a wire transfer in the amount of $66,571.50 to be initiated from JAFCU in order to purchase a Tesla automobile.

39.    Between January 2021 and March 31, 2026, Leigh Bridges caused two wire transfers in the total amount of $41,500 to be initiated from JAFCU to Graziela, Inc., a high-end jeweler, in Highland Park, Illinois.

40.    On April 29, 2024, Leigh Bridges caused a wire transfer in the amount of $378,780 to be initiated from JAFCU to Tiffany & Co., a high-end jeweler, in New York, New York.  Rather than Tiffany & Co., the instructions on the wire transfer sheet list the beneficiary as Raymond James with an address of 880 Carillon Parkway, St. Petersburg, Florida.  That same wire transfer sheet lists "Bridges, Chad & Leigh" under the section "Other Information."  The typing under the sections "Beneficiary Name," "Address," and "Other information" was typed over the original text written on the wire transfer sheet.  The obvious manipulation suggests that the sheet was altered to conceal the true beneficiary.

41. On August 21, 2023, Leigh Bridges caused a wire transfer in the amount of $20,130 to be initiated from JAFCU to Chung P. Luk in Hong Kong, China.  The purpose of this transaction is currently unknown to the NCUAB.

42. Between January 2021 and March 31, 2026, Leigh Bridges caused eight wire transfers in the combined amount of $617,507.00 to be made from JAFCU to Premier Prive, LLC, located at 530 Lytton Avenue, Floor 2, Palo Alto, California.  On information and belief, the funds were used for purchases from Circa Jewels, a high-end jeweler, which uses the same address as the address identified on the wire transfer sheet.

43. On information and belief, funds from JAFCU accounts were used to purchase, furnish, maintain, and/or to improve real property located at (a) 3826 Sleepy Hollow, Jackson, Mississippi, (b) 2085 Great Southern Road, Hazlehurst, Mississippi, (c) 257 Eastbrooke Street, Jackson, Mississippi, and (d)  29500 Perdido Beach Boulevard, Apartment 702, Orange Beach, Alabama.

44. The transfers of funds identified in paragraphs 25 through 43, above, originated from funds that belonged to JAFCU and in which Defendants had no property interest.

45. The transfers of funds identified in paragraphs 25 through 43, above, were for the personal benefit of Defendants and were not made to further any legitimate business purpose of JAFCU.

46. The transfers of funds identified in paragraphs 25 through 43, above, were not made as compensation, reimbursement, or as legitimate payment to Defendants.

47. On information and belief, Leigh Bridges concealed the sources of wire transfers in some or all of the transactions identified in paragraphs 36 through 39, 41, and 42, above, in a

manner similar to the concealment of the wire transfer to Tiffany & Co., as described in paragraph 40, above.

48.    Leigh Bridges concealed the fact that funds were missing from JAFCU by overstating the amount on JAFCU's general ledger on deposit with, or in transit from, a corporate credit union with which JAFCU does business.

49.    On April 17, 2026, in a meeting which included two JAFCU board members and two NCUA examiners, Leigh Bridges admitted to misappropriating JAFCU funds for her own personal benefit and to using false entries to conceal such misappropriation in the manner described in paragraph 48.

50.    At the April 17, 2026 meeting, Leigh Bridges admitted to using JAFCU funds to purchase luxury items, including expensive jewelry and handbags, and to transferring JAFCU funds into personal accounts, including accounts with American Express, Acorns Investing, and JP Morgan Chase Bank.

51.    As of April 17, 2026, the difference between the stated financials of JAFCU and the actual financials was a deficit of at least $95 million.

52.    The misappropriation of JAFCU funds was unknown to JAFCU's board of directors until April 17, 2026, when Leigh Bridges admitted to misappropriating JAFCU funds for her own personal benefit in a meeting which included two JAFCU board members and two NCUA examiners.

### Chad Bridges' Share Accounts with JAFCU

53.    In the year 2024, NCUA examiners spoke with Leigh Bridges concerning the high volume of funds going through her JAFCU share accounts.  After the conversation with NCUA examiners, Leigh Bridges closed her share accounts with JAFCU.

54. After closing her share accounts with JAFCU, Leigh Bridges began to run high volumes of funds through Chad Bridges' share accounts instead.

55. Between May 1, 2019, and May 4, 2026, Leigh Bridges caused to be transferred approximately $26.8 million in funds from the JAFCU general ledger to Chad Bridges' share accounts with JAFCU.

56. The transactions identified within paragraphs 27, 28, 36, 38, 40, and 42 were made using Chad Bridges' share accounts with JAFCU.

57. Transfers of almost $200,000 were made from Chad Bridges' share accounts with JAFCU to family members of Leigh Bridges.

58. Leigh Bridges made the transactions identified in paragraphs 56 and 57, above, through Chad Bridges' share accounts with JAFCU to conceal such transactions from the NCUA, including NCUA examiners, and JAFCU, including its board of directors.

59. Leigh Bridges exercised dominion and control over Chad Bridges' personal share accounts at JAFCU. Chad Bridges was a mere title holder.

60. As of May 4, 2026, Chad Bridges' share accounts at JAFCU equaled the total amount of $1,381,245.77. The NCUAB has frozen the accounts pending the outcome of this lawsuit.

61. Between May 1, 2019 and May 4, 2026, funds coming into Chad Bridges' share accounts at JAFCU from payroll for him totaled $397,035.13 (approximately $56,719.30 per year) after deductions. During that same period, funds coming into Chad Bridges' share accounts at JAFCU for Leigh Bridges' payroll totaled $705,637.40 (approximately $100,805.35 per year) after deductions.

62.     Leigh Bridges' yearly salary from JAFCU for 2025 was $193,758 and Chad Bridges' yearly salary from his employer for 2025 was $86,633.  The salaries and legitimate income sources of Defendants were far insufficient to provide the financial means to pay for the purchases identified in the preceding paragraphs of this Amended Complaint.

**Transactions Concerning Tina Funez**

63.     Leigh Bridges added Tina Funez as an authorized user on an American Express credit card account under Leigh Bridges' name.  During times relevant to this Amended Complaint, Tina Funez made purchases using that credit card, including the purchase of high-end jewelry and handbags.  That American Express card account is the same credit card identified in paragraph 25, above.  Between 2021 and 2025, Tina Funez made charges on that credit card in the total amount of $508,035.86.

64.     Tina Funez remodeled a dwelling on the island of Utila, a municipality in the department of Islas de la Bahía in the Republic of Honduras.  Leigh Bridges paid for the purchase of that property as well as all renovations to the property.

65.     Tina Funez has a 2023 Tesla Model Y titled to her name.  That vehicle was purchased by Leigh Bridges.

66.     Leigh Bridges gifted multiple high-end handbags to Tina Funez.  Tina Funez possesses at least thirty handbags that were gifts from Leigh Bridges that are each worth approximately $2,000.

67.     Leigh Bridges gave gifts of jewelry to Tina Funez.  Chad Bridges gave Tina Funez a Rolex watch.

68.     Tina Funez traveled for pleasure with Leigh Bridges.  Leigh Bridges paid for all the travel expenses, including payments for private airplanes and/or jets.

11

69.     Leigh Bridges and/or Chad Bridges provided money in an amount over $487,000 to Tina Funez from their JAFCU share accounts.

70.     Tina Funez rents the townhouse where she resides from Leigh and Chad Bridges. On information and belief, she pays and has paid less than fair market value for rent for the entirety of her tenancy.

**Count I: Fraudulent Misrepresentation - JAFCU Financial Statements (Leigh Bridges)**

71.     The NCUAB incorporates the allegations of paragraphs 1 through 70, above, as if fully set forth herein.

72.     Leigh Bridges represented to JAFCU, including its board of directors, and the NCUA, including NCUA examiners, on various financial statements, call reports, and other financial documents, that the financial condition of JAFCU was sound and that the credit union was adequately capitalized by overstating the amount held with, or being transmitted from, a JAFCU account with a corporate credit union with which JAFCU conducted business.

73.     Such representations were false in that the true amount in the corporate credit union account with which JAFCU conducted business was less than the amount that Leigh Bridges caused to be stated on the financial statements, call reports, and other financial documents of JAFCU.

74.     Such misrepresentations were material in that the amount held in the JAFCU corporate credit union account with which JAFCU conducted business, and JAFCU's total assets, were significantly less than the amount listed on the various financial statements, call reports, and other financial documents submitted to the NCUA, and that such misrepresentations were for the purpose of concealing misappropriation from the credit union.

75.    Leigh Bridges knew that the amount held in the JAFCU corporate credit union account with which JAFCU conducted business, and JAFCU's total assets, as stated on the various financial statements, call reports, and other financial documents, was a misrepresentation of the true amount at the time she caused to have such amount stated on such documents.

76.    Leigh Bridges misrepresented the amount so that JAFCU, including its board of directors, and the NCUA, including NCUA examiners, would believe that JAFCU was sufficiently capitalized so as to disguise her misappropriation of funds from JAFCU, and to permit her to remain in her position with JAFCU and to continue her scheme to defraud JAFCU.

77.    JAFCU, including its board of directors, and the NCUA, including NCUA examiners, did not know of the falsity of Leigh Bridges' statements until such time as she admitted to such misrepresentations on April 17, 2026, when Leigh Bridges admitted to misappropriating JAFCU funds for her own personal benefit in a meeting which included two JAFCU board members and two NCUA examiners.

78.    JAFCU, including its board of directors, and the NCUA, including NCUA examiners, rightfully relied on Leigh Bridges' misrepresentations as her fiduciary duties to JAFCU and other legal obligations required her to be truthful in representing such matters.

79.    As a result of Leigh Bridges' misrepresentations, she proximately caused JAFCU losses in amount equal to Leigh Bridges' misappropriation from JAFCU.  The NCUAB continues to investigate the size of the loss due to misappropriation and believes that it could be at least $95 million.

**Count II: Fraudulent Misrepresentation – Financial Transactions (Leigh Bridges)**

80.    The NCUAB incorporates the allegations of paragraphs 1 through 70, above, as if fully set forth herein.

81.     Leigh Bridges represented to JAFCU, including its board of directors, that the beneficiaries of various wire transfers and ACH transactions were beneficiaries to which JAFCU might plausibly wire funds, such as financial institutions.

82.     Such representations were false in that the beneficiaries of the various wire transfers and ACH transactions were not the persons listed on the books and records or on the wire transfer forms, but rather were to other accounts, entities, and persons, including those listed in paragraphs 36 through 42, above.

83.     Leigh Bridges knew that the listed beneficiaries on such transactions were not the actual beneficiaries of the wire transfers and ACH transactions.

84.      Leigh Bridges misrepresented the amount to JAFCU, including its board of directors, so as to disguise her misappropriation of funds from JAFCU, and to permit her to remain in her position with JAFCU and to continue her scheme to defraud JAFCU.

85.     JAFCU, including its board of directors, was unaware of the falsity of Leigh Bridges' statements until April 17, 2026, when Leigh Bridges admitted to misappropriating JAFCU funds for her own personal benefit in a meeting which included two JAFCU board members and two NCUA examiners.

86.     JAFCU, including its board of directors, rightfully relied on Leigh Bridges' misrepresentations as her fiduciary and other legal obligations required her to be truthful in representing such matters.

87.     As a result of Leigh Bridges' misrepresentations, Leigh Bridges proximately caused JAFCU losses based on the concealment of the misappropriated wire transfers and ACH transactions in an amount to be determined through discovery.

14

**Count III: Conversion of JAFCU Funds (Leigh Bridges)**

88.    The NCUAB incorporates the allegations of paragraphs 1 through 70, above, as if fully set forth herein.

89.    Leigh Bridges transferred funds that rightfully belonged to JAFCU to personal accounts of her and Chad Bridges, including the transfers of JAFCU funds in the manner described in paragraphs 18 through 22, above, for her own personal benefit.

90.    Leigh Bridges was and is in wrongful possession of such funds in that she has no legitimate claim to or interest in such funds.

91.    Leigh Bridges was and is exercising dominion or control over JAFCU's funds in that she has used such funds for numerous personal expenditures, including the expenditures identified in paragraphs 25 through 43, above, and is holding such funds in personal accounts for the benefit of Defendants.

92.    Such use of the funds was never approved or permitted by JAFCU, including its board of directors.

93.    JAFCU has suffered harm from such wrongful possession in that it has been and is being deprived of funds to which it is rightfully entitled in an amount equal to such misappropriated funds.  The NCUAB continues to investigate the size of the loss due to misappropriation and believes that it could be at least $95 million.

**Count IV – Breach of Fiduciary Duty (Leigh Bridges)**

94.    The NCUAB incorporates the allegations of paragraphs 1 through 70, above, as if fully set forth herein.

15

95.     As CEO and President of JAFCU, Leigh Bridges had fiduciary obligations to JAFCU at all times relevant to this Amended Complaint.  Under applicable law, those obligations included a duty of loyalty and a duty to protect JAFCU's property.

96.     Leigh Bridges breached her fiduciary duties to JAFCU by misappropriating funds belonging to JAFCU to her personal accounts, by utilizing JAFCU funds for her personal enrichment, and by misrepresenting the books and records of JAFCU, and the beneficiaries of wire transfers and ACH transactions, to conceal the monetary deficit and her misappropriation of JAFCU funds.

97.     As a result of Leigh Bridges' breach, JAFCU was harmed in an amount no less than the total amount of funds misappropriated from JAFCU.  The NCUAB continues to investigate the size of the loss due to misappropriation and believes that it could be at least $95 million.

98.     Because such breach is a breach of the duty of loyalty, in addition to compensatory damages, the NCUAB is permitted to disgorge the benefits and compensation that Leigh Bridges received from JAFCU, regardless of actual damages, from the year her disloyalty began until the date of Leigh Bridges' termination.

99.     To the extent disgorgement is not possible, in addition to its other damages, the NCUAB is entitled to a money judgment against Leigh Bridges in an amount equal to the benefits and compensation that she received from JAFCU, from the year her disloyalty began until the date of Leigh Bridges' termination, as a result of the breach of her fiduciary duties.

**Count V: Personal Liability Pursuant to 12 U.S.C. § 1787(h) (Leigh Bridges)**

100.    The NCUAB incorporates the allegations of paragraphs 1 through 99, above, as if fully set forth herein.

16

101.    "A director or officer of an insured credit union may be held personally liable for monetary damages in any civil action by, on behalf of . . . the [NCUA] Board . . . acting as conservator or liquidating agent of such insured credit union . . . for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct."  12 U.S.C. §§ 1787(h)(1), (3).

102.    Leigh Bridges was president and CEO of JAFCU beginning in the year 2021, and was an officer of JAFCU during all times relevant to this Amended Complaint.

103.    JAFCU was and is a federally-insured credit union during all times relevant to this Amended Complaint.

104.    In engaging in the conduct identified in this Amended Complaint, and engaging in the torts identified in Counts I through IV of this Amended Complaint, Leigh Bridges engaged in grossly negligent conduct, or, alternatively, engaged in conduct that demonstrates a greater disregard of a duty of care than gross negligence, within the meaning of 12 U.S.C. §§ 1787(h)(1), (3).

105.    Leigh Bridges is liable to the NCUAB, in its capacity as conservator of JAFCU, in an amount no less than the total amount of funds misappropriated from JAFCU.  The NCUAB continues to investigate the size of the loss due to misappropriation and believes that it could be at least $95 million.

**Count VI: Fraudulent Transfers Pursuant to 12 U.S.C. § 1787(b)(16)(A) (Leigh Bridges)**

106.    The NCUAB incorporates the allegations of paragraphs 1 through 70, above, as if fully set forth herein.

107.    The NCUAB may "avoid a transfer of any interest of an institution-affiliated party . . . in property . . . that was made within 5 years of the date on which the Board becomes

17

conservator . . . if such party or person voluntarily or involuntarily made such transfer . . . with the intent to hinder, delay, or defraud the insured credit union . . . ."  12 U.S.C. § 1787(b)(16)(A).

108.    As CEO and president of JAFCU, and as an officer of JAFCU, Leigh Bridges was an institution-affiliated party within the meaning of 12 U.S.C. § 1786(r).

109.    Leigh Bridges transferred JAFCU funds to her own account and Chad Bridges' accounts as described in paragraphs 18 through 22, above.  She also used JAFCU funds to purchase items, and to provide financial benefits to, Tina Funez as described in paragraphs 63 through 70, above.

110.    Such transfers were made with the intent to hinder, delay, or defraud JAFCU and/or the NCUAB.

111.    The NCUAB may recover any fraudulently-transferred property in accordance with 12 U.S.C. § 1787(b)(16)(B) for all transfers made five years prior to conservatorship until present to the extent such recovery is not inconsistent with 12 U.S.C. § 1787(b)(16)(C).  The total amounts of such transfers will be determined through discovery.

112.    To the extent recovery of the fraudulently-transferred property is inconsistent with 12 U.S.C. § 1787(b)(16)(C), the NCUAB is entitled to a money judgment against Leigh Bridges equal to the amount of such fraudulently-transferred property for all transfers made five years prior to conservatorship until present.  The total amounts of such transfers will be determined through discovery.

**Count VII: Fraudulent Transfers Pursuant to Miss. Code § 15-3-107 (Leigh Bridges)**

113.    The NCUAB incorporates the allegations of paragraphs 1 through 70, above, as if fully set forth herein.

18

114.    "A transfer . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay or defraud any creditor or debtor."  Miss. Code § 15-3-107(1).

115.    Moreover, "[a] transfer . . . by a debtor may be fraudulent . . . if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time . . . ."  Miss. Code § 15-3-107(2)(m).

116.    Leigh Bridges is a debtor of the NCUAB in that she is liable to JAFCU for the amount of funds that she misappropriated from the credit union.

117.    Among other transfers, Leigh Bridges transferred JAFCU funds to her own account and Chad Bridges' accounts as described in paragraphs 18 through 22, above.  She also used JAFCU funds to purchase items, and to provide financial benefits to, Tina Funez as described in paragraphs 63 through 70, above.

118.    Such transfers were made with the intent to hinder, delay, or defraud JAFCU and/or the NCUAB.

119.    Moreover, Leigh Bridges was insolvent at the time of such transfers in that her debt to JAFCU exceeded her ability to legitimately repay such debt at the time that such transfers were made.

120.    The NCUAB may recover all fraudulently-transferred property in accordance with Miss. Code § 15-3-111 to the extent such recovery is not inconsistent with Miss. Code §§ 15-3-113 and 115.  The total amounts of such transfers will be determined through discovery.

121.    To the extent recovery of the fraudulently-transferred property is inconsistent with Miss. Code § 15-3-113, the NCUAB is entitled to a money judgment against Leigh Bridges

19

equal to the amount of such fraudulently-transferred property to the extent such recovery is not inconsistent with Miss. Code § 15-3-115. The total amounts of such transfers will be determined through discovery.

**Count VIII: Fraudulent Transfers Pursuant to 12 U.S.C. § 1787(b)(16)(A) (Chad Bridges)**

122. The NCUAB incorporates the allegations of paragraphs 1 through 70, above, as if fully set forth herein.

123. The NCUAB may "avoid a transfer of any interest of an institution-affiliated party . . . in property . . . that was made within 5 years of the date on which the Board becomes conservator . . . if such party or person voluntarily or involuntarily made such transfer . . . with the intent to hinder, delay, or defraud the insured credit union . . . ." 12 U.S.C. § 1787(b)(16)(A).

124. As CEO and president of JAFCU, Leigh Bridges was an institution-affiliated party within the meaning of 12 U.S.C. § 1786(r).

125. The transfers to and through Chad Bridges' share accounts with JAFCU, including the transfers of JAFCU funds to those accounts in the manner described in paragraphs 18 through 22, above, were made with the intent to hinder, delay, or defraud JAFCU and/or the NCUAB.

126. The NCUAB may recover any fraudulently-transferred property held by Chad Bridges in accordance with 12 U.S.C. § 1787(b)(16)(B) for all transfers made five years prior to conservatorship until present because such recovery is not inconsistent with 12 U.S.C. § 1787(b)(16)(C). The amount of such transfers will be determined through discovery, but is no less than $1,381,245.77, the amount presently in Chad Bridges' JAFCU share accounts.

127. Alternatively, the NCUAB is entitled to a money judgment against Chad Bridges equal to the amount of such fraudulently-transferred property for all transfers made five years

20

prior to conservatorship until present.  The total amounts of such transfers will be determined through discovery but is no less than $1,381,245.77, the amount presently in Chad Bridges' JAFCU share accounts.

**Count IX: Fraudulent Transfers Pursuant to Miss. Code § 15-3-107 (Chad Bridges)**

128.    The NCUAB incorporates the allegations of paragraphs 1 through 70, above, as if fully set forth herein.

129.    "A transfer . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay or defraud any creditor or debtor."  Miss. Code § 15-3-107(1).

130.    Moreover, "[a] transfer . . . by a debtor may be fraudulent . . . if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time . . . ."  Miss. Code § 15-3-107(2)(m).

131.    Leigh Bridges is a debtor of the NCUAB in that she is liable to JAFCU for the amount of funds that she misappropriated from the credit union.

132.    The transfers to and through Chad Bridges' share accounts with JAFCU, including the transfers of JAFCU funds to those accounts in the manner described in paragraphs 18 through 22, above, were made with the intent to hinder, delay, or defraud JAFCU and/or the NCUAB.

133.    Moreover, Leigh Bridges was insolvent at the time of such transfers in that her debt to JAFCU exceeded her ability to legitimately repay such debt at the time that such transfers were made.

134.    The NCUAB may recover all fraudulently-transferred property held by Chad Bridges in accordance with Miss. Code § 15-3-111 because such recovery is not inconsistent with Miss. Code §§ 15-3-113 or 115.  The amount of such transfers will be determined through discovery, but is no less than $1,381,245.77, the amount presently in Chad Bridges' JAFCU share accounts.

135.    Alternatively, the NCUAB is entitled to a money judgment against Chad Bridges equal to the amount of such fraudulently-transferred property because such recovery is not inconsistent with Miss. Code §§ 15-3-113 or 115.  The amount of such transfers will be determined through discovery, but is no less than $1,381,245.77, the amount presently in Chad Bridges' JAFCU share accounts.

**Count X: Fraudulent Transfers Pursuant to 12 U.S.C. § 1787(b)(16)(A) (Tina Funez)**

136.    The NCUAB incorporates the allegations of paragraphs 1 through 70, above, as if fully set forth herein.

137.    The NCUAB may "avoid a transfer of any interest of an institution-affiliated party . . . in property . . . that was made within 5 years of the date on which the Board becomes conservator . . . if such party or person voluntarily or involuntarily made such transfer . . . with the intent to hinder, delay, or defraud the insured credit union . . . ."  12 U.S.C. § 1787(b)(16)(A).

138.    As CEO and president of JAFCU, Leigh Bridges was an institution-affiliated party within the meaning of 12 U.S.C. § 1786(r).

139.    The transfers to Tina Funez, including the transfers described in paragraphs 63 through 70, above, were made with the intent to hinder, delay, or defraud JAFCU and/or the NCUAB.

22

140. The NCUAB may recover any fraudulently-transferred property held by Tina Funez in accordance with 12 U.S.C. § 1787(b)(16)(B) for all transfers made five years prior to conservatorship until present because such recovery is not inconsistent with 12 U.S.C. § 1787(b)(16)(C). The total amounts of such transfers will be determined through discovery.

141. Alternatively, the NCUAB is entitled to a money judgment against Tina Funez equal to the amount of such fraudulently-transferred property for all transfers made five years prior to conservatorship until present. The total amounts of such transfers will be determined through discovery.

**Count XI: Fraudulent Transfers Pursuant to Miss. Code § 15-3-107 (Tina Funez)**

142. The NCUAB incorporates the allegations of paragraphs 1 through 70, above, as if fully set forth herein.

143. "A transfer . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay or defraud any creditor or debtor." Miss. Code § 15-3-107(1).

144. Moreover, "[a] transfer . . . by a debtor may be fraudulent . . . if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time . . . ." Miss. Code § 15-3-107(2)(m).

145. Leigh Bridges is a debtor of the NCUAB in that she is liable to JAFCU for the amount of funds that she misappropriated from the credit union.

146. The transfers to Tina Funez, including the transfers described in paragraphs 63 through 70, above, were made with the intent to hinder, delay, or defraud JAFCU and/or the NCUAB.

147.    Moreover, Leigh Bridges was insolvent at the time of such transfers in that her debt to JAFCU exceeded her ability to legitimately repay such debt at the time that such transfers were made.

148.    The NCUAB may recover all fraudulently-transferred property held by Tina Funez in accordance with Miss. Code § 15-3-111 because such recovery is not inconsistent with Miss. Code §§ 15-3-113 or 115.  The amount of such transfers will be determined through discovery.

149.    Alternatively, the NCUAB is entitled to a money judgment against Tina Funez equal to the amount of such fraudulently-transferred property because such recovery is not inconsistent with Miss. Code §§ 15-3-113 or 115.  The amount of such transfers will be determined through discovery.

### Count XII: Enforcement of Constructive Trust (All Defendants)

150.    The NCUAB incorporates the allegations of paragraphs 1 through 149, above, as if fully set forth herein.

151.    Through Leigh Bridges' misappropriation of funds belonging to JAFCU, Defendants have obtained or hold property which they ought not hold and enjoy in equity and good conscience because such property was obtained by actual or constructive fraud, duress, abuse of confidence, commission of wrong, and/or unconscionable conduct, artifice, concealment, and/or questionable means.

152.    As a result of such conduct, a constructive trust has arisen by operation of law as to all funds misappropriated from JAFCU, and as to all property to which such misappropriated funds are traceable.

153. The constructive trust creates an equitable lien on all funds misappropriated from JAFCU and as to all property to which such misappropriated funds are traceable.

154. Defendants are in possession of property to which the equitable lien has attached, including, upon information and belief, the real property identified in paragraph 43.

155. Because the constructive trust has arisen with respect to funds that were misappropriated from JAFCU, such equitable lien is superior to all other liens that may have attached to such property.

156. The NCUAB may enforce the equitable lien as to all funds misappropriated from JAFCU, as to all property to which such misappropriated funds are traceable, and as to any profits earned though funds misappropriated from JAFCU, consistent with applicable law, including enforcement through repossession of funds or through the sale of any property subject to the equitable lien pursuant to an order of this Court.

**Count XIII: Relief Pursuant to 12 U.S.C. § 1787(b)(2)(G) (All Defendants)**

157. The NCUAB incorporates the allegations of paragraphs 1 through 156, above, as if fully set forth herein.

158. The NCUAB, in its capacity as conservator of JAFCU, is authorized to request that "any court of competent jurisdiction . . . issue an order in accordance with Rule 65 of the Federal Rules of Civil Procedure, including an order placing the assets of any person . . . under the control of the court and appointing a trustee to hold such assets." 12 U.S.C. § 1787(b)(2)(G).

159. In requesting such an order, "Rule 65 of the Federal Rules of Civil Procedure shall apply . . . without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate." 12 U.S.C. § 1787(b)(2)(H)(i).

160. The NCUAB is entitled to permanent relief under 12 U.S.C. § 1787(b)(2)(G) upon prevailing on any of the previous Counts of this Amended Complaint because the harm to JAFCU outweighs any potential harm to Defendants and because such an order is in the public interest.

161. The NCUAB requests an order placing the assets of Defendants that are within the jurisdiction of this Court under the control of this Court; enjoining Defendants from transferring assets or expending funds up to the total value of the money judgments obtained under Counts I through XI of this Amended Complaint; and appointing the NCUAB as trustee with authority to repossess all misappropriated funds and sell Defendants' property and/or the property purchased with the misappropriated funds until its money judgments are satisfied.

WHEREFORE, Plaintiff NCUAB, acting in its capacity as conservator of JAFCU, requests that this Court:

(a) enter a money judgment in its favor and against Defendant Leigh Bridges in the amount that misappropriated from JAFCU, as requested in Counts I, III, IV, and V;

(b) alternatively, enter a money judgment in its favor and against Defendant Leigh Bridges in the amount of the losses based on the concealment of misappropriated wire transfer and ACH transactions, as requested in Count II;

(c) enter an order requiring Defendant Leigh Bridges to disgorge all salaries and benefits paid to her during her period of disloyal conduct or, in the alternative, a money judgment in that amount against Defendant Leigh Bridges, as requested in Count IV;

(d) enter an order unwinding all fraudulent transfers of Leigh Bridges or, in the alternative, a money judgment against Defendant Leigh Bridges in that amount, as requested in Counts VI and VII;

26

(e) enter an order unwinding all fraudulent transfers to Chad Bridges, or, in the alternative, a money judgment against Defendant Chad Bridges in that amount, as requested in Counts VIII and IX;

(f) enter an order unwinding all fraudulent transfers to Tina Funez, or, in the alternative, a money judgment against Defendant Tina Funez in that amount, as requested in Counts X and XI;

(g) enter an order imposing a constructive trust for the benefit of Plaintiff NCUAB on all funds misappropriated from JAFCU, and all property acquired using such funds, as requested in Count XII;

(h) enter an order requiring Defendants to disgorge any profits earned though funds misappropriated from JAFCU or, in the alternative, a money judgment in that amount against Defendants, as requested in Count XII;

(i) enter an order holding that Plaintiff NCUAB has an equitable lien that is superior to all other later liens, and permitting Plaintiff NCUAB to enforce the equitable lien created by the constructive trust through repossession of funds or through the sale of any property subject to the equitable lien, as requested in Count XII;

(j) enter an order placing the assets of Defendants that are within the jurisdiction of this Court under the control of this Court; enjoining Defendants from transferring assets or expending funds up to the total value of the money judgments obtained under Counts I through XI of this Amended Complaint; and appointing Plaintiff NCUAB as trustee with authority to repossess all misappropriated funds and sell Defendants' property and/or the property acquired with the misappropriated funds until its money judgments are satisfied, as requested in Count XIII; and

27

(k)   award NCUAB its costs, and all other relief permitted by law.

## JURY DEMAND

Plaintiff NCUAB demands a trial by jury as to all Counts of this Amended Complaint to the extent they are so triable.

Respectfully submitted,

June 15, 2026

_____

Alysson Mills, Mississippi Bar No. 102861

650 Poydras Street Suite 1525
New Orleans, Louisiana 70130
t/f: 504-586-5253
alysson@alyssonmills.com

*Counsel for Plaintiff*
NATIONAL CREDIT UNION ADMINISTRATION BOARD,
acting in its capacity as conservator of
JACKSON AREA FEDERAL CREDIT UNION

28

## CERTIFICATE OF SERVICE

I, Alysson Mills, certify that on June 15, 2026, I sent a copy of the forgoing to Leigh Bridges at lucyleighjames@aol.com and John Colette, her confirmed counsel, at colettelawms@gmail.com; and Chad Bridges at chad.bridges@msdh.ms.gov and Billy Quinn, his presumed counsel, at wquin@mmqnlaw.com.

I further certify that I sent a copy of the forgoing along with a waiver of service of process to Tina Funez at tfunez@gmail.com and Chris Routh, her presumed counsel, at chris@csrdefense.com.

_Alysson Mills_

_____

Alysson Mills