UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NATIONAL CREDIT UNION ADMINISTRATION
BOARD, in its capacity as conservator of
Jackson Area Federal Credit Union,                                          PLAINTIFF


V.                                                          CIVIL ACTION NO. 3:26-cv-343-DPJ-RPM


LEIGH BRIDGES, CHAD BRIDGES, AND TINA FUNEZ                       DEFENDANTS


**ORDER OF PRELIMINARY INJUNCTION,
PREJUDGMENT ATTACHMENT OF ACCOUNTS AND ASSETS,
AND IMPOSITION OF TRUSTEESHIP ON CERTAIN PROPERTY**

Upon the motion of Plaintiff, the National Credit Union Administration Board ("NCUAB"), acting in its capacity as conservator of Jackson Area Federal Credit Union ("JAFCU"), for a preliminary injunction against Defendants Leigh and Chad Bridges (collectively "Defendants"), a preliminary attachment of Defendants' accounts and assets, and the imposition of trusteeship on certain property of Defendants, this Court, having reviewed the NCUAB's memoranda of law and the declarations submitted in support of such motion, makes the following findings:

(a) The requirements of the traditional four-factor injunction standard, as modified by 12 U.S.C. §§ 1787(b)(2)(G), (H), have been met;

(b) to the extent required by 12 U.S.C. §§ 1787(b)(2)(H)(i), the NCUAB has shown harm in that without a preliminary injunction, prejudgment attachment, and imposition of a trusteeship, the NCUAB's ability to collect on a judgment in this lawsuit and the likely constructive trust in favor of NCUAB will likely be compromised, and such an order is necessary to mitigate the realistic possibility of the transfer and/or dissipation of funds and assets; and

1

(c) the NCUAB is a United States agency within the meaning of Fed. R. Civ. P. 65(c);

(d) After receiving notice of this motion, Defendants failed to respond.  Because Plaintiff's motion is non-dispositive, the Court may grant it as unopposed.  *See* L.U. Civ. R. 7(b)(3)(E).

Accordingly, Plaintiff NCUAB's motion is **granted**, and this Court orders as follows:

1.      The temporary restraining order and preliminary attachment of accounts and assets, entered by this Court on May 15, 2026, *see* ECF No. 7, and continued until such time as this Court rules on the motion herein granted, *see* ECF No. 9, is continued until the entry of final judgment in this lawsuit, subject to any modifications to that order in the paragraphs that follow below, which are effective immediately.

### *Freeze of accounts and assets*

2.      All financial accounts of any kind of the Defendants remain frozen until the entry of final judgment in this lawsuit.  Accordingly, the Defendants are restrained and enjoined from transferring or disposing of any funds in any financial account possessed, owned by, titled to, or controlled by them in any capacity, otherwise in their custody, or in which they have any beneficial interest, including but not limited to any accounts owned by the Bridges Family Trust.

3.      Furthermore, all financial accounts identified in paragraph 2 are subject to a prejudgment attachment, such that, upon this Court finding that an individual or entity with actual notice of this Order knowingly, recklessly, or with gross negligence, facilitated the transfer of funds from such account, such individual or entity will be liable to the NCUAB in an amount equal to the amount of such funds in the event that the funds cannot be recovered through reasonable efforts of the NCUAB.

4.      The financial accounts subject to paragraphs 2 and 3 of this Order include, but are not limited to, Leigh Bridges' and/or Chad Bridges' accounts with Raymond James Financial, The

RealReal, Copiah Bank, JP Morgan Chase Bank, Acorns Investing, American Express Bank, Coinbase Global, Inc., First National Bank of Omaha, ReBag, What Goes Around Comes Around – New York City, CashApp, Kansas City Life Insurance, and JAFCU, Franklin Templeton Investments, The Northern Trust Company, DriveWealth, LLC, Goldman Sachs, and Park Avenue Wealth Management.

5.      In addition to the freezing of accounts as discussed in paragraphs 2 through 4 of this Order, Defendants are restrained and enjoined from transferring or disposing of all other property owned by, titled to, controlled by them in any capacity, otherwise in their custody, or in which they have any beneficial interest, including but not limited to any property owned by the Bridges Family Trust.

6.      Furthermore, any and all property of Defendants, as specified in paragraph 5, is subject to a prejudgment attachment, such that, upon this Court finding that an individual or entity with actual notice of this Order knowingly, recklessly, or with gross negligence, facilitated the transfer of and/or devaluation of such property, such individual or entity will be liable to the NCUAB in an amount equal to the value of such property in the event that the property or the proceeds therefrom cannot be recovered through reasonable efforts of the NCUAB.

7.      The property subject to paragraphs 5 and 6 of this Order includes, but is not limited to, real property located at (a) 3826 Sleepy Hollow, Jackson, Mississippi, (b) 2085 Great Southern Road, Hazlehurst, Mississippi, (c) 257 Eastbrook Street, Jackson, Mississippi, and (d) 29500 Perdido Beach Boulevard, Apartment 702, Orange Beach, Alabama, and all fixtures, furnishings, and chattels therein.  Such property also includes, but is not limited to, automobiles including a 2026 Tesla Model Y, a 2021 Mercedes-Benz GLA 250, a 2020 Mercedes-Benz G 550, and a 2023

Tesla Model Y. Such property further includes, but is not limited to, all artwork, jewelry, handbags, clothing, and/or cash-value life insurance policies.

8. The Defendants are restrained and enjoined from taking any action that would cause the decrease in value of, or the amount of equity in, any of their property, which includes but is not limited to the acts of encumbering, mortgaging, pledging, impairing, converting, wasting, or otherwise disposing of or dissipating such property.

### *The trusteeship of certain property*

9. This Court hereby places certain property under its control with the NCUAB appointed to serve as trustee of such property. The property that the NCUAB may take custody of under this Order includes all tangible items with estimated resale fair market value of over $100, including but not limited to artwork, antiques, jewelry, furniture, furnishings, furniture, electronics, handbags, clothing, and musical instruments, but specifically excluding real property, fixtures, automobiles, food, alcohol and liquor, cell phones, computers, animals, animal feed, firearms, ammunition, hazardous materials, chemicals, pharmaceuticals, family photographs, bibles or other religious writings, intimate apparel, medicine, medical equipment, illegal contraband, weapons, explosives, and items reasonably believed to belong to someone other than the Defendants. Notwithstanding the foregoing sentence, the NCUAB may elect to not take into custody a particular item or items even though such item meets the inclusion criteria explained in the previous sentence. The NCUAB will use reasonable judgment to not take custody of items that are necessary to maintain a minimal standard of living or that are necessary to perform professional work or other essential activities.

10. The Defendants are required to provide the NCUAB, including but not limited to its employees, contractors, attorneys, agents, and all others with authority to act on the agency's

4

behalf ("NCUAB agents"), access to their residence at 3826 Sleepy Hollow, Jackson, Mississippi ("Sleepy Hollow residence"), including the land and all structures thereon, no later than **the next business day following the entry of this Order** so that the NCUAB can inspect the items of property found at the residence, estimate such item's resale value, and inventory and take custody of items meeting the inclusion criteria identified in paragraph 9. NCUAB agents are permitted to be at the residence anytime between the hours of 9 a.m. and 7 p.m. The Defendants will make arrangements so that at least one Defendant is present at the residence during the time that NCUAB agents are at the residence absent extenuating circumstances. The Defendants may not unjustifiably deny the NCUAB's access to the Sleepy Hollow residence with contempt of court being the potential penalty for such misconduct.

11.     Prior to and during the NCUAB agents' inspection of the Sleepy Hollow residence, the Defendants will advise the NCUAB agents of all dangerous or potentially dangerous conditions and items at the residence, including but not limited to the location of any structural disrepair, animals, firearms, ammunition, weapons, or chemicals. Any animals presenting a potential threat will be restrained or removed from the premises by the Defendants. The Defendants will also advise the NCUAB agents of all fragile items at the residence so that proper care can be used in handling such items. Furthermore, the Defendants will advise NCUAB agents of all persons on the premises, or anticipated to be on the premises, during their access to the residence. In addition, the Defendants must advise the NCUAB agents if they are being videorecorded or photographed while on the premises, and will provide copies of any recordings or photographs taken to the NCUAB upon its request.

12.     The Defendants are permitted to supervise all inspections and collections of items at the Sleepy Hollow residence. The Defendants may not interfere with, obstruct, or impede the

efforts of NCUAB agents to inspect, inventory, or take into its custody any items meeting the inclusion criteria identified in paragraph 9 with contempt of court being the potential penalty for such misconduct. Furthermore, the Defendants will assist NCUAB agents in identifying items identified in paragraph 9 for inspection, and will provide the NCUAB with access to all areas of the Sleepy Hollow property where items potentially meeting the inclusion criteria identified in paragraph 9 are located. The Defendants will also advise NCUAB agents if an item belongs to a person other than Defendants and if an item is subject to a lien or encumbrance of any kind.

13. During the inspection of the Sleepy Hollow residence, the Defendants may not intentionally conceal or fail to reveal any item meeting the inclusion criteria identified in paragraph 9 with contempt of court being the potential penalty for such misconduct. If the Defendants at a later time should recollect that they failed to advise NCUAB agents of a location at the residence where items potentially meeting the inclusion criteria identified in paragraph 9 are located, they will contact the NCUAB's counsel to arrange for NCUAB agents to inspect, inventory, and possibly take custody of the items.

14. NCUAB agents are permitted to videorecord and photograph the Sleepy Hollow residence prior to and during entry to the residence. To the extent possible, NCUAB agents will take a time-stamped photograph or photographs of all items that they intend to inspect in order to document the condition of the item before handling it. The NCUAB will give copies of any recordings or photographs taken to the Defendants upon request. NCUAB agents will inventory and adequately document the condition of all items prior to taking any item into its custody.

15. NCUAB agents are permitted to continue the inspection and inventory of items at the Sleepy Hollow residence between the hours of 9 a.m. and 7 p.m. until all items at the residence

potentially meeting the inclusion criteria identified in paragraph 9 have been inspected and NCUAB agents have taken the desired items meeting that description into their custody.

16.     Upon taking custody of an inventoried item, the NCUAB will be responsible for the maintenance and care of such item.  The costs of such maintenance and care will be borne provisionally by the NCUAB with a final decision on responsibility for costs to be decided by this Court at a later time.

17.     The NCUAB is responsible for any loss, destruction, or decline in value that is not attributable to normal wear and tear of all the items taken into its custody that is due to improper handling or maintenance of the item.  Accordingly, to the extent that items handled by NCUAB agents or in the NCUAB's custody are damaged or unaccounted for as a result of the NCUAB's negligence, the amount of unrecouped damage or loss (as determined from the fair market value of the item at the time NCUAB took it into its custody) will be credited against any money judgment obtained against either or both of the Defendants.  If any money judgment to the NCUAB has already been satisfied or there is no final judgment permitting the NCUAB to retain custody of any items, and items remain in the NCUAB's custody, the NCUAB will return the items to the Defendants within a reasonable period of time.  To the extent that such items are damaged or unaccounted for as a result of the NCUAB's negligence, the NCUAB will be liable to the Defendants for the amount of damage or loss (as determined from the fair market value of the item at the time NCUAB took it into its custody).  If any item in the NCUAB's custody is later determined to be not subject to this Order, the NCUAB will return the items to the owner or owners within a reasonable period of time. To the extent that such items are damaged or unaccounted for as a result of the NCUAB's negligence, the NCUAB will be liable to the owner or owners for the amount of damage or loss (as determined from the fair market value of the item at the time NCUAB

took it into its custody). The NCUAB is entitled to request proof of ownership before returning an item to an owner or owners. In no event is the NCUAB liable for the lost use or enjoyment of an item during the time when the item is in NCUAB custody.

18. While NCUAB agents are inspecting the Sleepy Hollow residence, the Defendants will give NCUAB agents access to all automobiles on the premises so that they may inspect the condition and record the mileage of such automobiles. The Defendants may not unjustifiably deny NCUAB agents access to the automobiles with contempt of court being the potential penalty for such misconduct.

19. Any disputes pertaining to paragraphs 9 through 18 of this Order may be addressed through the filing of a motion with this Court. The parties to the dispute must in good faith attempt to resolve all disputes before filing any motion and will endeavor to avoid bringing motions over trivial matters or matters susceptible to resolution through the good faith negotiation of the parties. Any party filing a motion that is not substantially justified or that is brought in bad faith subjects such party to potential sanctions. In addition to the parties to this litigation, any person claiming an interest in property affected by this Order may bring a motion subject to the conditions set forth in this paragraph.

### *Other conditions concerning property*

20. The Defendants and, if applicable, Bonita Bridges, may continue to reside at the Sleepy Hollow residence subject to the restrictions imposed by this Order. During the pendency of this litigation, the Defendants will ensure that all properties owned by them are fully insured up to fair market value of the properties and that all insurance premiums are paid timely. If the Defendants fail to abide by this Order, pay property-related bills, and/or properly maintain any real property or the structures thereon, or the NCUAB believes that the value of specific property may

decline significantly without it taking control of the property, the NCUAB may file a motion with the Court requesting to place the real property or all real property owned by the Defendants under the control of this Court with the NCUAB appointed as trustee.

21.    Upon receiving 48 hours of notice, the Defendants will permit NCUAB agents to inspect any of the real property owned by them.  Access to any real property that is actively rented will be in accordance with the terms of any lease or rental agreement and/or consistent with a reasonable notice period as permitted by law.  The Defendants may not unjustifiably deny the NCUAB's access to any real property with contempt of court being the potential penalty for such misconduct.

22.    Any renter of any property owned by Leigh and Chad Bridges may continue to reside at the property under terms of the lease subject to the conditions set forth in this Order until the entry of a final judgment in this lawsuit.  The Defendants will arrange for all rent to be paid directly to the NCUAB.  The rent monies will be held by the NCUAB in a non-interest bearing escrow account pending the outcome of this lawsuit.  If a tenant fails to pay rent, commits waste, or materially breaches the terms of the lease, the NCUAB may file a motion seeking appropriate relief with this Court with respect to the lease of any real property that is within the jurisdiction of this Court.

23.    The Defendants and, if applicable, Bonita Bridges, may only use their automobiles for necessary travel, which includes travel within the City of Jackson; travel in order to comply with this Order or fulfill any legal obligation or for other legal purposes; travel to, from, or for professional work; and travel for medical appointments or for other medical reasons.  During the pendency of this litigation, the Defendants will ensure that all automobiles owned by them are fully insured (including collision insurance) up to the fair market value of the automobile and that

all insurance premiums are paid timely.  If the Defendants fail to abide by this Order, to pay automobile-related bills, or properly maintain the automobiles, and/or the NCUAB believes that the value of an automobile may decline significantly without it taking control of the property, the NCUAB may file a motion with the Court to place the automobiles owned by the Defendants under the control of this Court with the NCUAB appointed as trustee.

24.    Upon receiving 48 hours of notice, the Defendants will permit the NCUAB to inspect any of the automobiles owned by them.  The Defendants may not unjustifiably deny the NCUAB's access to any automobile with contempt of court being the potential penalty for such misconduct.

### *Conditions concerning expenditures*

25.    The Defendants may use income derived from the salary of Chad Bridges during the pendency of this lawsuit.  That income may be used for basic living expenses, and any attorneys' fees and legal expenses, and will be used for ordinary and necessary expenditures for the purposes of operating and preserving any asset or property interest subject to this Order.  These required expenses include the payment of real estate or personal property taxes, insurance, condominium fees, mortgages or other debts secured by the real or personal property, bills for utilities necessary to the preservation of real property, and urgent repairs, as such expenses come due.  The Defendants will arrange for Chad Bridges' salary to be deposited into a specific account and will forward a copy of statements for such accounts to the NCUAB soon after each statement is received by the Defendants.

### *Other conditions of this Order*

26.    The Defendants, and all other persons in active concert or participation with them who receive actual notice of this Order, are restrained and enjoined from taking any action that

would lead to the destruction, erasure, mutilation, concealment, alteration, or transfer of documents and information concerning the Defendants' finances, including but not limited to, documents and information concerning funds transferred to their accounts from JAFCU at any time during the last fifteen years.

27. **Within five (5) business days of the entry of this Order**, the Defendants will provide counsel for the NCUAB with a list identifying all real property owned by, titled to, or controlled by them in any capacity, otherwise in their custody, or in which they have any beneficial interest. The list will include the address of the property, any residents at the entrance, any persons other than the Defendants with keys to the property, any liens on the property, any outstanding bills with respect to the property, any hazardous conditions on the property, and any necessary repairs that need to be made to such property.

28. The Defendants must make the properties identified in any list required by paragraph 27 not already inspected available for inspection as soon as possible following the completion of the list. The inspections will proceed similarly to the inspection of the Sleepy Hollow residence and in accordance with the applicable conditions set forth in paragraphs 9 through 18, above. The Defendants may not unjustifiably deny NCUAB agents access to any property with contempt of court being the potential penalty for such misconduct. Access to any real property that is actively rented will be in accordance with the terms of any lease or rental agreement and/or consistent with a reasonable notice period as permitted by law.

29. **Within five (5) business days of the entry of this Order**, the Defendants will provide counsel for the NCUAB with a list identifying all locations where personal property owned by, titled to, or controlled by them in any capacity, otherwise in their custody, or in which they have any beneficial interest, which meets the inclusion criteria identified in paragraph 9, can be

found.  The list will include the address of the property, the owners of the property, any residents at the property, any persons other than the Defendants with keys to the property, the general nature of the property contained at such location, and the estimated total value of the property meeting the inclusion criteria identified in paragraph 9 contained at such location.

30.     The Defendants must make the properties identified in any list required by paragraph 29 not already inspected available for inspection as soon as possible following the completion of the list.  The inspections will proceed similarly to the inspection of the Sleepy Hollow residence and in accordance with the applicable conditions set forth in paragraphs 9 through 18, above.  To the extent the location is not under control of Defendants, the Defendants will make arrangements for NCUAB agents to gain access to the location as soon as possible or will provide NCUAB agents the pertinent information so that they can make the necessary arrangements to gain access to the location.  The Defendants may not unjustifiably deny NCUAB agents access to the properties with contempt of court being the potential penalty for such misconduct.

31.     **Within five (5) business days of the entry of this Order**, the Defendants will provide counsel for the NCUAB with a list of all automobiles owned by, titled to, or controlled by them in any capacity, otherwise in their custody, or in which they have any beneficial interest.  The list will include the year, make, model, and mileage of the automobile, the titleholders to the automobile, the current location of the automobile, any required maintenance for the automobile, and will identify any persons other than the Defendants with keys to the automobile.

32.     The Defendants must make the automobiles identified in the list required by paragraph 31 not already inspected available for inspection as soon as possible following the completion of the list.  To the extent the location where the automobile is located is not under

12

control of Defendants, the Defendants will make arrangements for NCUAB agents to gain access to the location as soon as possible or will provide NCUAB agents the pertinent information so that they can make the necessary arrangements to gain access to the location.  The Defendants may not unjustifiably deny NCUAB agents access to the automobiles with contempt of court being the potential penalty for such misconduct.

33.    **Within five (5) business days of the entry of this Order**, the Defendants will provide to counsel for the NCUAB with the most recent account statements for all financial accounts of any kind possessed, owned by, titled to, or controlled by them in any capacity, otherwise in their custody, or in which they have any beneficial interest in which they have money or credits.  Such accounts include but are not limited to accounts with any bank, credit union, financial institution, trading or investment firm, and resale websites.  If the account statements do not identify the institutions where the account is held, the amount in the account, or all owners and beneficiaries of the account, the Defendants will provide a list to counsel for the NCUAB identifying such information at the same time that it provides the account statements to counsel.

34.    **Within five (5) business days of the entry of this Order**, the Defendants will provide counsel for the NCUAB with a list of all intangible property owned by, titled to, or controlled by them in any capacity, otherwise in their custody, or in which they have any beneficial interest.  Such intangible property includes but is not limited to any interest in loans, cryptocurrency, or a trust, corporation, or business not held through an account identified in the list provided in response to paragraph 33, above.  Such list will include the nature of the intangible property, the date the interest was acquired, the approximate value of the interest, and all persons with an interest in the intangible property.

35.     **Within five (5) business days of the entry of this Order**, the Defendants will provide to counsel for the NCUAB a list of all persons other than each other receiving gifts of cash of $1,000 or more, or gifts of property with a fair market value of $1,000 or more at the time the gift was made, from Defendants that were made from January 1, 2015 until the present.  The list will include the name of the beneficiary of the gift, the date of the gift, the amount or value of the gift, the total value of the gifts made to such person, and the type of property gifted, if applicable. To the extent that this exact information is not known, the Defendants will reasonably approximate the information requested and will note that the information is an approximation in their response.

### Enforcement of this Order

36.     Any willful disobedience of clear commands in this Order by a person subject to this Order, or any other person in active concert or participation with such person, with actual notice of this Order is punishable by contempt.

37.     The NCUAB is authorized to contact the U.S. Marshals for this District and to employ their services to the extent necessary to effectuate this Order.  Such services include but are not limited to maintaining the peace during the inspection of real or personal property within the jurisdiction of this Court.

### No bond is required

38.     In accordance with Fed. R. Civ. P. 65(c), the NCUAB, as an agency of the federal government, is not required to post any bond in connection with this Order granting its request for injunctive relief.

**SO ORDERED AND ADJUDGED** this the 7th day of July, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

14