UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION
---------------------------------------------------------------------X

NATIONAL CREDIT UNION ADMINISTRATION BOARD, in its capacity as conservator of Jackson Area Federal Credit Union,

Plaintiff,

v.

LEIGH BRIDGES, CHAD BRIDGES, and TINA FUNEZ,

Defendants.

---------------------------------------------------------------------X

Case No.: 3:26-cv-343-DPJ-RPM
Hon. Daniel P. Jordan
Hon. Robert P. Myers, Jr.

**DECLARATION OF TIMOTHY NEWBOLD**

I, Timothy Newbold, declare, pursuant to 28 U.S.C. § 1746, the following to be a true and correct:

1. I am an Analyst with the National Credit Union Administration ("NCUA" or "the agency"), and I have worked for the agency in this capacity for seven years. I work for the Division of Asset Recovery within NCUA's Asset Management Assistance Center ("AMAC"). AMAC is the office within the agency that manages assets acquired from both operating and liquidated credit unions, among other functions. Before working for NCUA, I previously worked for the FDIC for approximately ten years in various roles. In these positions, I managed loss share agreements of large loan portfolios, oversaw public-private joint ventures, and the disposition of assets acquired from failed banks.

2. The NCUA, as conservator for JAFCU, has retained ORE Financial as a vendor to assist with effectuating the preliminary injunctions, ECF Nos. 20, 21, to wit, through the collection,

maintenance, and inventorying of the property subject to the above-captioned lawsuit. Based on my background with both asset recovery and experience working with ORE Financial, I was specially assigned to oversee the ORE Financial contract. I have also been assisting ORE Financial in executing its assigned tasks in connection with my duties.

3. Leigh and Chad Bridges own real property located at (1) 3826 Sleepy Hollow, Jackson, Mississippi ("Sleepy Hollow residence"), (2) 2085 Great Southern Road, Hazelhurst, Mississippi, (3) 29500 Perdido Beach Blvd, Apt 702, Orange Beach, Alabama ("Alabama condo"), and (4) 257 Eastbrooke St, Jackson, Mississippi ("Eastbrooke condo"). The first, third, and fourth property listed are jointly titled to Leigh and Chad Bridges. Leigh Bridges attorney has estimated the Sleepy Hollow residence as being worth $2 million and the Eastbrooke condo as being worth $450,000. I have not independently verified those estimates.

4. I have personally been to the Sleepy Hollow residence in order to assist with collecting and inventorying luxury items located on the premises. The Sleepy Hollow residence is currently vacant, except for the cats that remain on the property. I understand that Chad Bridges currently resides in an apartment that he rents. I also understand that Leigh Bridges currently resides at the Eastebrooke condo and that she has lived there since early July.

5. An armed security service paid for by NCUAB currently patrols the Sleepy Hollow residence 24/7. The service was initially obtained due to a need to protect the highly valuable jewelry, handbags, and other items located at the Sleepy Hollow residence, which were taken into NCUAB custody with the permission of the Bridges, but only recently removed from the premises.

6. The armed security service currently costs JAFCU the amount of $3,600 per day ($150 per hour). Under the contract with that company, NCUAB must provide two days of notice prior to ceasing security services. Security services began on June 18 when NCUAB agents and

employees gained access to the property; a different, armed security service took over on June 23. As of August 20, JAFCU has incurred $ 225,652.50 in total security costs. Those expenses (and any additional expenses paid after August 20) will reduce the recoveries that may be returned to JAFCU in connection with the above-captioned litigation.

7. Because of the value of the luxury items located at the Sleepy Hollow residence, the NCUAB was unwilling to relocate the items until the items were insured, given the possibility of a multimillion-dollar loss. NCUAB through ORE Financial solicited bids, negotiated with bidders, and were eventually able to obtain an insurance policy through Lloyd's of London. The policy came into effect on August 7, 2026, and covers the luxury items taken from the Sleepy Hollow residence. The luxury items were transported to a secure location after the insurance policy took effect.

8. The personal property remaining in the Sleepy Hollow residence, which includes a Steinway piano among other luxury items, is covered by the same insurance policy. To avoid possible non-compliance with the insurance agreement, the NCUAB is keeping security at the Sleepy Hollow residence until the property is placed in the name of the NCUAB, as conservator for JAFCU.

9. The security service is also currently necessary because without the Sleepy Hollow residence in the name of the NCUAB, the NCUAB is unable to exclude persons from the property. The NCUAB cannot control the setting of the security system without control over the property. Due to media publicity, there are concerns about persons trespassing, vandalizing, or even breaking into the residence. Because the insurer requires the property not to be left unoccupied unless the alarm system is in place, in addition to transfer of the titles of the real properties to the NCUAB, the NCUAB also requires the codes for the security system.

10. Transfer of the titles of the real property to the NCUAB is also important so that the NCUAB can take out its own insurance on the properties. I have not seen copies of the Bridges' homeowners policies for the properties and thus do not know the extent of coverage or whether there is current compliance with the policies. I also do not know whether the premiums on those policies are being paid.

11. The Eastbrooke condo and the Alabama condo both require the payment of condominium fees and assessments. I understand that the Bridges' have fallen behind in the payment of assessments at the Alabama condo. I reviewed an early July voicemail from James Garren, on behalf of the condominium association of which the Alabama condo belongs, stating that "[the Bridges] are not paying their bills or anything else right now." I also reviewed an unpaid invoice from the same condominium association dated July 18, showing $6,636.78 in unpaid condominium fees and insurance. That invoice contained a finance charge. I have also been made aware that James Garren contacted NCUAB's counsel in this litigation on July 28, informing her that the Bridges had not been returning his calls.

12. I do not know whether those unpaid condominium expenses have been paid as of the date of this declaration. I understand that late charges, interest, and potentially attorney fees can be assessed under Alabama law if monies due to a condominium association are not paid timely.

13. The real property owned by the Bridges has various upkeep expenses. In addition to the usual utilities, the Sleepy Hollow residence has a pool and requires regular lawn care. I currently do not have records from Leigh or Chad Bridges showing whether utilities or other bills for the properties are being paid or not. The NCUAB will be in a much better position to account

for the expenses for the various properties, and to ensure that they are paid, if the properties are placed in a court trusteeship with the NCUAB appointed to manage the properties.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 20, 2026.

Timothy D Newbold
Timothy Newbold
Analyst
Division of Asset Recovery
Asset Management Assistance Center
National Credit Union Administration