UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION
------------------------------------------------------------------X

NATIONAL CREDIT UNION ADMINISTRATION BOARD, in its capacity as conservator of Jackson Area Federal Credit Union,

Plaintiff,

v.

LEIGH BRIDGES, CHAD BRIDGES, and TINA FUNEZ,

Defendants.

Case No.: 3:26-cv-343-DPJ-RPM
Hon. Daniel P. Jordan
Hon. Robert P. Myers, Jr.

------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT LEIGH BRIDGES' MOTION FOR STAY OF CIVIL ACTION**

Plaintiff, the National Credit Union Administration Board ("NCUAB"), acting in its capacity as conservator of Jackson Area Federal Credit Union ("JAFCU"), submits the following memorandum of law in opposition to Defendant Leigh Bridges' Motion for Stay of Civil Action.

**APPLICABLE LEGAL STANDARDS**

"It 'is the rule, rather than the exception' that civil and criminal cases proceed together." *Chamberlain v. Baxter*, No. 4:21-cv-170-SA-JMV, 2022 WL 831228, at *1 (N.D. Miss. Mar. 18, 2022). Even if a civil and criminal case are brought by separate federal agencies,

> There is no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal actions by different federal agencies against the same defendant involving the same transactions. Parallel civil and criminal proceedings instituted by different federal agencies are not uncommon occurrences because of the overlapping nature of federal civil and penal laws. The simultaneous prosecution of civil and criminal actions is generally unobjectionable because the federal government is entitled to vindicate the different interests promoted by different regulatory provisions even though it attempts to vindicate several interests simultaneously in different forums.

*FDIC. v. Maxxam, Inc.*, 523 F.3d 566, 592 (5th Cir. 2008) (quoting *SEC v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 666-67 (5th Cir. 1981)).

Despite this strong presumption against a stay, "a district court should stay one of the proceedings pending completion of the other to prevent a party from suffering **substantial and irreparable prejudice**." *First Fin. Grp.*, 659 F.2d at 668 (emphasis added). Whether a party can show substantial and irreparable prejudice depends upon: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest." *Indian Harbor Ins. Co. v. Moore*, No. 1:20-cv-268-HSO-RHWR, 2022 WL 19394915, at *2 (S.D. Miss. Sept. 8, 2022). "It is the burden of the party seeking the stay to overcome the 'strong presumption in favor of discovery' and demonstrate why a stay is warranted." *Thomas v. City of Benoit, Mississippi*, No. 4:18-cv-00115-GHD-JMV, 2018 WL 5284615, at *1 (N.D. Miss. Oct. 24, 2018) (quoting *United States v. Gieger Transfer Serv.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997)).

## ARGUMENT

### I. Leigh Bridges has not met her Burden of Showing that a Stay is Appropriate.

#### *A. The extent of overlap between the criminal and civil cases.*

If a "Defendant has yet to be indicted . . . 'it is simply a matter of speculation whether the civil action and the pending criminal investigation overlap.'" *Wilemon Found., Inc. v. Wilemon*, No. 1:19-cv-136-GHD-DAS, 2020 WL 6220808, at *2 (N.D. Miss. Oct. 22, 2020); *see Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 401 (S.D. Tex. 2009) ("Prior to an indictment, whether

the issues will even overlap is a mere 'matter of speculation.'"). Leigh Bridges has not yet been indicted, D.'s mem. 4, and thus the degree of overlap between this case and any criminal case, if any, is unable to be determined. Leigh Bridges states that "the facts and issues in the civil action significantly overlap [with] the facts and issues in the criminal proceedings against Defendant Leigh Bridges. In fact, the two cases allege the same facts and issues." D.'s mem. 2-3. But conclusory statements are not evidence of overlap. *See Wilemon Found.*, 2020 WL 6220808, at *2 ("The Defendant has only blankly stated his own conclusory statements, and failed to provide sufficient evidence from which this Court could conclude that the two proceedings substantially overlap.").

Leigh Bridges does state that "a Bill of Information will be filed against [her] under Title 18 §§ 657 and 1006, and Title 26 § 7206[.]" D.'s mem. 4. The first two statutes cover embezzlement from a federally-insured credit union and making false statements to the NCUA, among a wide range of other conduct. Without an indictment or bill of information (as Leigh Bridges states is to be filed), the degree of overlap between those potential charges and this civil case, if any, is pure conjecture. *See Wilemon Found.*, 2020 WL 6220808, at *2 ("While the two proceedings involve conversion and embezzlement, it is unclear to what degree these proceedings overlap."). The potential charges alone cannot justify a stay of this case.

***B. The status of the criminal case.***

A "stay is most appropriate when a party has been criminally indicted." *Indian Harbor Ins.*, 2022 WL 19394915, at *2; *see Alcala*, 625 F. Supp. 2d at 401 ("[C]ourts generally decline to impose a stay where the defendant is under criminal investigation, but has yet to be indicted."). This is because a "case in the investigative stage . . . has the potential to languish; an indictment or criminal complaint may never issue, and the risk to the defendant never truly ends

until 'the criminal statute of limitations has run—possibly several years hence.'" *Thomas*, 2018 WL 5284615, at *2.

Leigh Bridges has not been indicted. D.'s mem. 4. Although the lack of an indictment may be given less import if an indictment is imminent, *see Wilemon Found.*, 2020 WL 6220808, at *3, no indictment appears imminent here. If anything, it is a bill of information that appears imminent. D.'s mem. 1, 4. Because 18 U.S.C. §§ 657, 1006, and 26 U.S.C. § 7206 all carry possible sentences of over one year, a bill of information could only be filed if Leigh Bridges waives her right to an indictment in open court. *See* Fed. R. Crim. P. 7(b). This waiver suggests that Leigh Bridges will be entering into a plea agreement rather than defending a criminal case. This is consistent with statements that her attorney has made to NCUAB's counsel. *See* Ex. A, 7/15/26 Letter.

**A plea agreement obviates any basis for a stay**. In the event of a plea, there is no further risk of incrimination because the defendant must "ma[k]e an admission of guilt in accepting the plea deal, and presumably waive[] her Fifth Amendment privilege against self-incrimination." *De'Omilia Plastic Surgery, PC v. Sweeton*, No. 12-cv-06415 FLW, 2013 WL 6070037, at *4 (D.N.J. Nov. 18, 2013); *see* also *Duncan v. Banks*, No. 15-cv-148-XR, 2017 WL 4805111, at *3 (W.D. Tex. Oct. 24, 2017) ("Because Defendant pled guilty in the criminal case, . . . . Defendant's Fifth Amendment rights are no longer implicated by this civil case."); Fed. R. Crim. P. 11(b)(1)(E), (F) (requiring courts to advise a defendant that she is waiving her Fifth Amendment rights by pleading guilty). The apparent likely plea deal, and the absence of Leigh Bridges providing evidence to the contrary, strongly weighs in favor of permitting this case to proceed.

***C. The burden on and interests of the plaintiff.***

"'[I]n evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim[.]" *Alcala*, 625 F. Supp. 2d at 405. There is more prejudice than simply a delay here. There is significant prejudice to the NCUAB if a stay were to be entered.

The NCUAB, in accordance with this Court's preliminary injunction order, ECF No. 20, and with the consent of Leigh Bridges, *see* Ex. B, has taken custody of valuable jewelry, handbags, and other items owned by Leigh and/or Chad Bridges. *See* Newbold decl. ¶¶ 4, 7. The personal property is being held in an undisclosed secure location where storage costs will be at least $5,000 per month. *Id.* ¶ 7. Costs are also being incurred to secure the property remaining at Leigh Bridges' former residence at Sleepy Hollow, which includes a Steinway piano. *Id.* ¶ 8. If the NCUAB were to end the 24/7 security at that property, it would likely be noncompliant with the insurance contract insuring that property. *Id.* ¶ 8. The security services have cost the NCUAB $225,652.50 thus far and will continue at the rate of $3,600 per day ($150 per hour). *Id.* ¶ 5. If this case is stayed for even a short period, those costs will quickly negate any recovery that the NCUAB will receive from selling that property. *Id.* These costs also harm Leigh Bridges in that the recoveries applied against any money judgment obtained against her will be reduced. The significant costs weigh heavily against a stay.

***D. The burden on and interests of Leigh Bridges.***

To justify a stay of a civil case, a defendant must show that "allowing th[e] suit to proceed will create a significant risk of endangering his Fifth Amendment rights." *Wilemon Found.*, 2020 WL 6220808, at *3. To do so, the defendant must "make a specific showing of the harm [she] will suffer without a stay and why other methods of protecting [her] interests are insufficient." *Id.* (quoting *In re Ramu Corp.*, 903 F.2d 312, 320 (5th Cir. 1990)). Leigh Bridges'

memorandum only refers to the general prejudice that can occur when a defendant must defend herself in parallel proceedings; **she does not identify any prejudice specific to her situation**. D.'s mem. 5-6. However, "the mere relationship between criminal and civil proceedings, and the resulting prospect that discovery in the civil case could prejudice the criminal proceeding, does not establish the requisite good cause for a stay." *Gieger Transfer Serv.*, 174 F.R.D. at 385 (citing *United States v. 6600 North Mesa, El Paso, Texas*, 903 F.2d 312, 320 (5th Cir. 1990)).

Even if a defendant can show some potential prejudice, "it is not unconstitutional to force a defendant to choose between the negative inferences drawn from his silence and h[er] Fifth Amendment privilege." *Wilemon Found*,. 2020 WL 6220808, at *3. To the extent necessary, a court can "rule on selective claims of Fifth Amendment privilege and objections to specific requests during the discovery process." *Alcala*, 625 F. Supp. 2d at 414; *see also Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("In the proper case the trial judge should use his discretion to narrow the range of discovery."); *Duncan*, 2017 WL 4805111, at *2 (noting the "Court's power to control discovery" in the civil litigation to protect Fifth Amendment claims).

As argued above, to the extent that Leigh Bridge accepts a plea deal, there is no Fifth Amendment concern. *See De'Omilia Plastic Surgery*, 2013 WL 6070037, at *4; *Duncan*, 2017 WL 4805111, at *3. Even if the criminal case were to be indicted and Leigh Bridges were to defend herself at trial, there would still be little Fifth Amendment concern. Leigh Bridges **already incriminated herself** when she admitted to misappropriating JAFCU funds for her own personal benefit and to using false entries on the financials of JAFCU to conceal such misappropriation in April 2026. *See* ECF No. 12-5, Baylor decl. ¶¶ 8-9; ECF No. 12-4, Hill decl. ¶¶ 7-10; ECF No. 12-7, Meyer decl. ¶ 7; ECF No. 12-6, O'Quinn decl. ¶¶ 8-10. Although the NCUAB is not waiving its right to discovery, given the compelling evidence of her liability

to the NCUAB, the NCUAB does not currently anticipate needing discovery from Leigh Bridges. Instead, the NCUAB anticipates moving for summary judgment against her based on evidence already in the record. In the event that the NCUAB were to serve discovery on Leigh Bridges, she could of course renew her motion for stay at that time, provided that the discovery implicates her Fifth Amendment right against self-incrimination. Currently, however, there is no basis for a stay, whether Leigh Bridges accepts a plea agreement or proceeds to trial in any criminal case.

***E. The interests of the Court and the public.***

"The Court has an interest in moving its cases 'to an expeditious conclusion.'" *Thomas*, 2018 WL 5284615, at *4. This consideration favors proceeding with this case. "[T]he Court also has an interest in appropriately managing judicial resources . . . ." *Id.* This consideration also favors proceeding with this case. Although resolution of a criminal case can facilitate settlement, *see id.*, or lead to a finding of collateral estoppel against a convicted criminal defendant, *see* 18 U.S.C. § 3664(l), as stated above, the NCUAB intends to resolve this case through summary judgment without taking discovery from Leigh Bridges. Consequently, there is no additional efficiency gained in this case from permitting any criminal case that might be brought against Leigh Bridges from proceeding first.

The interest of the public is similar to the judicial interest: "the prompt resolution of civil cases" and "the efficient and economic use of the judicial system's resources[.]" *Wilemon Found.*, 2020 WL 6220808, at *4. As just argued, those points weigh against granting a stay. The public interest also weighs against granting a stay in that the National Credit Union Share Insurance Fund will ultimately be harmed if this case is stayed. Like other regulators, the NCUA's insurance of members' accounts "is fundamental to the financial stability of the entire [financial institution] industry[.]" *FSLIC v. Dixon*, 835 F.2d 554, 563 (5th Cir. 1987); *see RTC*

*v. Cruce*, 972 F.2d 1195, 1201 (10th Cir. 1992) ("[T]he RTC protects the depository insurance fund, which in a very real sense translates to the interest of all taxpayers."). In guaranteeing a $110 million line of credit to JAFCU, the Share Insurance Fund is ultimately responsible for any unmitigated losses of JAFCU. *See* ECF No. 12-7, Meyer decl. ¶ 9. Therefore, the losses to the NCUAB, discussed in Part C, are not just losses to an ordinary plaintiff; they are likely losses to the public more broadly. This potential harm to the public weighs greatly against a stay.

## II. Alternatively, any Stay Should be Restricted only as to Discovery that Involves Leigh Bridges.

Even if a stay were appropriate, it should be narrowly tailored only to limit discovery from Leigh Bridges. The Court should not prohibit the case from moving forward on summary judgment because there is no justification for court intervention if a defendant has already admitted an incriminating fact. *See Alcala*, 625 F. Supp. 2d at 414 (finding court intervention unnecessary where defendant had already admitted a particular, relevant fact). At most, the case should be stayed only as to Leigh Bridges. *See Chamberlain*, 2022 WL 831228, at *3 ("[B]y limiting discovery to the non-criminal Defendants and staying the case as to [the criminal defendant], [Fifth Amendment] concerns . . . should be minimized."). At this time, the NCUAB has no knowledge of possible criminal charges against Chad Bridges or Tina Funez. Staying the case in its entirety would thus unnecessarily delay discovery as to them and serve no Fifth Amendment purpose. Because Leigh Bridges has not provided any specific information substantiating a valid Fifth Amendment purpose for staying this case, however, the Court need not reach the NCUAB's alternative arguments.

## CONCLUSION

For the reasons explained above, the Court should deny Defendant Leigh Bridges' motion to stay this case or, in the alternative, grant a stay only as to discovery that involves Leigh Bridges.

Respectfully submitted,

August 21, 2026

*/s/ Alysson Mills*

Alysson Mills, Mississippi Bar No. 102861

650 Poydras Street Suite 1525
New Orleans, Louisiana 70130
t/f: 504-586-5253
alysson@alyssonmills.com

*Counsel for Plaintiff*
NATIONAL CREDIT UNION ADMINISTRATION BOARD,
acting in its capacity as conservator of
JACKSON AREA FEDERAL CREDIT UNION

CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of filing to all counsel of record.

*/s/ Alysson Mills*

Alysson Mills