UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NATIONAL CREDIT UNION ADMINISTRATION BOARD,
In its Capacity as Conservator of
Jackson Area Federal Credit Union — PLAINTIFF

VS. — CIVIL ACTION NO.: 3:26-cv-343-DPJ-RPM

LEIGH BRIDGES, CHAD BRIDGES
and TINA FUNEZ — DEFENDANTS

---

**MEMORANDUM BRIEF IN SUPPORT OF URGENT AND NECESSITOUS MOTION TO DISSOLVE AND/OR MODIFY PRELIMINARY INJUNCTION**

---

Defendant Chad Bridges ("Chad") hereby files this Memorandum Brief in Support of his Urgent and Necessitous Motion to Dissolve and/or Modify the Preliminary Injunction entered in this matter [Doc. 20], as follows:

**INTRODUCTION AND BACKROUND**

Plaintiff National Credit Union Administration Board ("National") filed this civil action on May 14, 2026, in its capacity as the conservator of Jackson Area Federal Credit Union ("Jackson"). Doc. 1. National alleges that Jackson's former CEO, Defendant Leigh Bridges ("Leigh"), "misappropriated at least $51 million dollars in funds from [Jackson]." *Id.* at p. 5.

Seeking to recover such funds, National has sued Leigh alleging that, because of her position with Jackson, she was able to access credit union funds and conceal her actions by falsifying internal records. National has also sued Leigh's husband, Chad, but since he was never employed with Jackson, it does not allege any active

wrongdoing on his part. Indeed, National describes Chad as a "mere title holder" [*Id.* at p. 10] and has included him in this lawsuit only to the extent he has or shares title to any assets traceable to funds allegedly misappropriated from Jackson by Leigh.

On May 15, 2026, the Court granted National's Motion for a Temporary Restraining Order ("TRO") without notice. Doc. 7. The TRO, which was later extended by the Court, essentially placed a blanket "freeze" on all of the Bridges' financial accounts ostensibly to prevent the potential dissipation of funds allegedly misappropriated from Jackson by Leigh.

On June 15, 2026, National filed an Amended Complaint which added Tina Funez as a defendant. Doc. 17. On July 7, 2026, the Court entered an Order converting the TRO to a Preliminary Injunction as to all defendants. Doc. 20. The Preliminary Injunction was entered without an evidentiary hearing and before the defendants formally appeared in this matter.

Chad filed his Separate Answer and Affirmative Defenses on August 11, 2026. Doc. 31. Therein, Chad has raised an affirmative defense (consistent with National's pleadings) that he was a "mere title holder" and innocent owner of any property that may have been acquired through the alleged acts forming the basis of its Complaint. Moreover, Chad has denied any involvement in or knowledge of the specific acts alleged by National against Leigh.

The Preliminary Injunction maintains the "freeze" on all of the defendants' financial accounts and subjects them to a "prejudgment attachment" in favor in National. Until the entry of a final judgment, it preliminarily enjoins and restrains

the defendants from transferring or disposing of any funds in any financial accounts in which they have an interest (either individually or jointly). Doc. 20 at p. 2.

The Preliminary Injunction also imposes certain financial obligations which are primarily directed at Chad. It directs that, during the pendency of this litigation, "defendants" are required to pay insurance premiums and other expenses in order to maintain, operate and preserve certain properties, including the Bridges' personal residence. *Id.* at p. 8. As to the source of funds for such obligations, the Order states that defendants "may use income derived from the salary of Chad Bridges" for basic living expenses, attorney's fees and property-related expenses. *Id.* at p. 10.

Until recently, Chad had been employed since 2004 with the Mississippi Insurance Department ("MID"), and in 2026, his annual salary was approximately $120,000. Shortly after this lawsuit was filed and became public, MID terminated Chad's employment on or about June 16, 2026. Chad is currently fifty-five (55) years old. Although he has been seeking other employment opportunities, Chad has not yet secured another full-time job. At present, Chad is receiving unemployment benefits of $235 per week which will continue for a maximum period of 26 weeks (ending in or around December, 2026). *See* Ex. 1.

Chad has an Individual Retirement Account ("IRA") with Raymond James. Chad is also a participant in the Mississippi Government Employees' Deferred Compensation Plan and Trust ("MDC Plan"). This is a tax-deferred retirement plan under § 457(b) of the Internal Revenue Code offered through the Public Employees'

Retirement System ("PERS") of Mississippi to all state employees. *See* https://www.pers.gov/retirementplans.

Chad's IRA and MDC Plan are among the accounts that are "frozen" by the Preliminary Injunction. Chad seeks to dissolve and/or modify the Preliminary Injunction as to these accounts because he is need of funds to pay for basic living expenses, attorney's fees and property-related expenses. *Id.* National has no legitimate basis to oppose this relief because Chad's retirement accounts are exempt from seizure under execution or attachment pursuant to Mississippi law. *See* Miss. Code. Ann. § 85-3-1(e). Moreover, there is no evidence whatsoever that any of the funds in these accounts are traceable to funds allegedly misappropriated from Jackson by Leigh.

**ARGUMENT**

District courts have broad equitable power to modify a preliminary injunction "when the legal or factual circumstances justifying the injunction have changed." *Bear Ranch, LLC. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 803 (5th Cir. 2018). To dissolve a preliminary injunction, the movant must show that changed circumstances warrant relief. *See Scionti v. Dornfried*, 137 F.3d 1351 (5th Cir. 1998). If such a change is established, the district court should examine the motion to dissolve under the same standard that applies in deciding whether to grant an injunction in the first instance. *See Chamber of Commerce of United States v. Consumer Protection Financial Protection Bureau*, 767 F. Supp.3d 357, 362 (N.D. Tex. 2024). The familiar

quartet is the likelihood of success on the merits, the threat of irreparable injury to the party seeking interim relief, the equities and the public interest.

**1. Change of Circumstances**

When the Court entered the Preliminary Injunction, it was predicated on a factual assumption that Chad was employed and that his salary would be available to pay financial obligations including property-related expenses, attorney's fees and basic living expenses. Those circumstances have materially changed. Because Chad has been terminated by MID and is no longer receiving a regular salary, relief from the Preliminary Injunction is warranted on the basis of financial need.

Moreover, as noted above, the TRO and the Preliminary Injunction were entered before Chad formally entered his appearance through counsel in this matter. Thus, until now, Chad has not had the opportunity to challenge the breadth of the Preliminary Injunction and assert his legal entitlement to his personal retirement accounts as being exempt from pre or post judgment attachment. Relief is warranted for this reason regardless of financial need, but because of Chad's loss of employment and mounting expenses, this makes the circumstances urgent and necessitous.

**2. The Preliminary Injunction Should be Dissolved as to Chad's Retirement Accounts**

In fashioning appropriate injunctive relief, federal courts must be mindful of Fed.R.Civ.P. 64 which permits pre-judgement seizure of a defendant's property only to the extent allowed by the laws of the state where the court is located. *See A.T.N. Indus., Inc. v. Gross,* 632 Fed.Appx. 185, 192 (5th Cir. 2015); *see also* Fed.R.Civ.P. 69(a)(execution on a money judgment "must accord with the procedure of the state

where the court is located"). Under Mississippi law, retirement accounts are exempt from pre-and/or post-judgment seizure under execution or attachment. *See* Miss. Code. Ann. § 85-3-1(e). This exemption expressly applies to "assets held in or monies payable to the participant or beneficiary from" a deferred compensation plan under § 457(b) and IRAs.[1]

Chad is legally entitled to the assets held in or monies payable from his IRA and MDC Plan account. There is no allegation by National, nor any evidence whatsoever, that the funds in Chad's retirement accounts are traceable to any funds allegedly misappropriated from Jackson by Leigh. To the contrary, Chad has presented evidence that his retirement plans were funded solely through his previous employments as part of his benefits. *See* Ex. 1 to Chad's Motion.

As explained in his affidavit, Chad's MDC Plan account was funded solely through deferral contributions from his monthly paycheck from MID dating back to 2004 and there were no deposits into this account from any outside source. *See* Exhibit 1 and Exhibits 1-1 and 1-2 attached thereto. Chad's IRA was funded entirely from contributions to a 401(k) plan and pension plan offered by his former employer, Blue Cross and Blue Shield of Mississippi ("BCBS"). Prior to working for MID, Chad was employed with BCBS from 1992 until 2003. When he left BCBS, he rolled his 401(k) balance into an IRA which was initially with another firm and was later

---

[1] Miss. Code. Ann. § 85-3-1(e). In the bankruptcy context, Mississippi's state-law exemptions apply because Mississippi has "opted out" of the federal exemption scheme. *See* 11 U.S.C. § 522(b)(2) (providing for exemptions listed in the Bankruptcy Code unless not authorized by applicable state law); Miss. Code Ann. § 85-3-2 (federal exemptions prohibited). *See also In re Knight*, 633 B.R. 782, 784 (S.D. Miss. Bankr. 2023). The Fifth Circuit applies the "snapshot" approach in determining whether property is exempt, meaning that exemptions are assessed as of the date of filing and are not changed by subsequent events. *See Zibman v. Tow,* 268 F.3d 298, 302 (5th Cir.2001).

transferred to Raymond James where it has been held for the past several years. The only deposit made to Chad's IRA within the past 10 years occurred in June 2025 in the amount of $86,479. The source of these funds was the termination of the BCBS pension plan which triggered a lump-sum distribution and was rolled-over into Chad's IRA. *See* Exhibit 1 and Exhibit 1-3 attached thereto.

Under Mississippi law, Chad's retirement accounts are completely exempt from attachment or garnishment by National. Therefore, placing a "freeze" over these accounts and prohibiting Chad from accessing these funds during the pendency of this litigation serves no legitimate or lawful purpose.

To maintain a restraint on assets via a preliminary injunction, the movant must establish a substantial likelihood of success on the merits and that it will suffer irreparable injury. National cannot sustain this burden as to Chad's retirement accounts. Because the funds in Chad's retirement accounts are legally exempt and are not traceable to any funds allegedly misappropriated from Jackson by Leigh, National has a zero percent likelihood of success in ever attaching or executing upon these accounts to satisfy a judgment. Moreover, preventing Chad from accessing exempt funds does not preserve a pool of collectable assets for National; it merely penalizes him by causing financial hardship.

Unless some relief is granted from the Preliminary Injunction, Chad simply does not have the means to pay his basic living expenses (including the obligations imposed by the Court) or his attorney's fees to defend himself against this action. In *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 564-65 (5th Cir. 1987), the

Fifth Circuit provided "some observations to guide the district court" in modifying a preliminary injunction which prohibited former officers of a failed savings and loan association from potentially dissipating ill-gotten assets. Although *Dixon* did not directly address retirement account exemptions under applicable state law, the Court's "observations" are instructive here regarding the impropriety of an injunction which effectively cripples a defendant's ability to pay for basic living expenses and attorney's fees.

Noting that "[t]he basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here," the Court concluded that "some kind of allowance must be made to permit each defendant to pay reasonable attorneys' fees." *Dixon*, 835 F.2d at 565. The Court also concluded that "the district court should allow the defendants to demonstrate any legitimate claim they have to the frozen assets." *Id.* That is, if frozen assets are subject to an exemption and "were acquired at time or through such means that there is no likelihood that they were acquired from ill-gotten [assets]," then relief would also be warranted to that extent. *Id.*

Here, Chad has demonstrated that he has a legitimate claim to his frozen retirement accounts. Chad has shown that these assets are exempt from seizure under Mississippi law and were acquired at a time and through such means as there is no likelihood that they were acquired with funds allegedly misappropriated from Jackson by Leigh. Moreover, even if this were not the case, relief from the Preliminary

Injunction must be granted to at least give Chad the ability to pay his expenses and attorney's fees.

**3. Good Faith Certification**

The undersigned certifies that, prior to filing this motion and as required by Paragraph 19 of the Preliminary Injunction, he attempted on several occasions to confer in good faith with opposing counsel about this issue. However, counsel have been unable to reach a satisfactory resolution.

**CONCLUSION**

For these reasons, Chad respectfully requests that this Court: (1) grant his Motion to Dissolve and/or Modify the Preliminary Injunction; (2) order that the freeze on Chad's IRA and MDC Plan account be immediately lifted and dissolved; (3) direct National to immediately notify the financial institutions of the dissolution of the freeze upon entry of this Court's Order; and (4) grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this the 25th day of August, 2026.

**CHAD BRIDGES**

By: *__/s/ W. Thomas McCraney, III__*
W. Thomas McCraney, III

**OF COUNSEL:**

W. Thomas McCraney, III (MS Bar No. 10171)
William M. Quin II (MS Bar No. 10834
Sean R. Guy (MS Bar No. 100362
**MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
tmccraney@mmqnlaw.com
wquin@mmqnlaw.com
sguy@mmqnlaw.com

**CERTIFICATE OF SERVICE**

I do hereby certify that the foregoing pleading was filed electronically through the Court's CM/ECF system and served electronically on all parties enlisted to receive service electronically.

This the 25th day of August, 2026.

*/s/ W. Thomas McCraney, III*
W. Thomas McCraney, III