**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**NATIONAL CREDIT UNION ADMINISTRATION BOARD,**
**in its capacity as conservator of**
**Jackson Area Federal Credit Union** **PLAINTIFF**

**VS.** **CIVIL ACTION NO.: 3:26-cv-343-DPJ-RPM**

**LEIGH BRIDGES, CHAD BRIDGES**
**and TINA FUNEZ** **DEFENDANTS**

---

**DEFENDANT CHAD BRIDGES' MEMORANDUM BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR IMPOSITION OF A TRUSTEESHIP ON REAL PROPERTY**

---

## INTRODUCTION AND BACKGROUND

Plaintiff National Credit Union Administration Board ("National") filed this civil action on May 14, 2026, in its capacity as the conservator of Jackson Area Federal Credit Union ("Jackson"). [Doc. 1]. National alleges that Jackson's former CEO, Defendant Leigh Bridges ("Leigh"), "misappropriated at least $51 million dollars in funds from [Jackson]." *Id.* at p. 5.

Seeking to recover such funds, National has sued Leigh alleging that, because of her position with Jackson, she was able to access credit union funds and conceal her actions by falsifying internal records. National has also sued Leigh's husband, Chad, but since he was never employed with Jackson, it does not allege any active wrongdoing on his part. Indeed, National describes Chad as a "mere title holder." *Id.* at p. 10. National included Chad in this lawsuit only to the extent he has or shares

title to any assets traceable to funds allegedly misappropriated from Jackson by Leigh.

On May 15, 2026, the Court granted National's Motion for a Temporary Restraining Order ("TRO") without notice. [Doc. 7]. The TRO, which was later extended by the Court, essentially placed a blanket "freeze" on all of the Bridges' financial accounts and also enjoined them from transferring or disposing of any real or personal property owned by them, including but not limited to the properties located at: (a) 3826 Sleepy Hollow, Jackson, Mississippi; (b) 2085 Great Southern Road, Hazlehurst, Mississippi; (c) 275 Eastbrook St., Jackson, Mississippi; and (d) 29500 Perdido Beach Blvd., Apt. 702, Orange Beach, Alabama.

On June 15, 2026, National filed an Amended Complaint which added Tina Funez as a Defendant. [Doc. 17]. On July 7, 2026, the Court entered an Order converting the TRO to a Preliminary Injunction as to all Defendants. [Doc. 20].

The Preliminary Injunction enjoins and restrains the defendants from transferring or disposing of their assets during the pendency of this action. *Id.* at p. 2. It orders that certain items of personal property shall be placed under a Court-supervised "trusteeship" allowing National to take custody of and preserve such items for eventual execution if a money judgment is entered its in favor in this matter. The "trusteeship" imposed by the Preliminary Injunction specifically excluded the Bridges' real property assets, although it maintained the status quo by enjoining any transfer or disposition of the same during the pendency of this litigation. *Id.* at p. 4.

The Preliminary Injunction also imposes certain financial obligations which are primarily directed at Chad. It directs that, during the pendency of this litigation, "defendants" are required to pay insurance premiums and other expenses in order to maintain, operate and preserve the Bridges' properties, including their personal residence. *Id.* at p. 8. As to the source of funds for such obligations, the Order provides that Defendants "may use income derived from the salary of Chad Bridges" for basic living expenses, attorney's fees and property-related expenses. *Id.* at p. 10.

The Preliminary Injunction states that "if the Defendants fail to abide by this Order, pay property-related bills and/or property maintain any real property . . ., or if [National] believes that the value of specific property may decline significantly without it taking control of the property, [it] may file a motion with the Court requesting to place the real property or all real property owned by the Defendants under the control of this Court with [National] appointed as trustee." *Id.* at pp. 8-9.

On August 21, 2026, National filed an "urgent and necessitous" motion to impose a trusteeship over the Bridges' real property assets. [Doc. 33]. National's motion is an extraordinary, pre-judgment overreach that attempts to bypass fundamental state property rights, homestead protections, and the explicit limits of this Court's order. National seeks a sweeping remedy—the outright transfer of real property titles via quitclaim deeds—under the guise of an equitable "trusteeship." It does so without proving, or even alleging, any active wrongdoing by Chad, whom National itself has characterized as a "mere title holder."

The real properties at issue, including the primary marital residence (Sleepy Hollow), are currently frozen by the Preliminary Injunction. This Order completely preserves the status quo and restrains the Bridges from selling, transferring, or dissipating the assets. National has manufactured an emergency out of its own discretionary choices. Now, it is trying to leverage this situation to force Chad into signing away vested property rights and by cutting off his ability to maintain himself, hold his property, or fund his legal defense. National's Motion should be denied as to its request for an order compelling the outright conveyance of the Bridges' real property assets. However, Chad does not oppose a trusteeship which is limited to preserving and managing the asserts during the pendency of this litigation.

## ARGUMENT

### I. National Fails to Present an "Urgent and Necessitous" Matter Because the Alleged "Emergency" is Entirely Self-Inflicted

National styles its motion as "urgent and necessitous." In federal practice, such designations are reserved for true, unforeseen emergencies that jeopardize the subject matter of litigation before the court can consider the issue through the ordinary briefing procedures. No such emergency exists here.

#### A. The Property Vacancy Was Requested by National

National argues that immediate court intervention is necessary because the Sleepy Hollow residence is currently vacant, exposing it to heightened risk. However, National omits the critical fact that the property is vacant solely because it asked Leigh to move out and agreed she should temporarily stay at the Eastbrook property. Having requested and condoned the vacancy, it is disingenuous for National to use

this situation as legal crisis. To the extent this agreed upon living arrangement is more expensive than anticipated, then there are certainly options available that do not entail forcing the Bridges to give away their vested property rights. National's suggestion that this is the only option available to the Court is absurd.

### B. Exorbitant Private Security Costs Are a Discretionary, Self-Inflicted Burden

The "urgency" asserted by National is entirely financial arising from the fact that it is burning through $3,600 to maintain a 24/7 private security presence at the Sleepy Hollow property. This is a manufactured crisis. National unilaterally chose to deploy a round-the-clock private security force to guard an empty residential house. Chad did not consent to this expenditure, nor did this Court order it.

### C. The Absence of Pre-Judgment Title is the Law, Not an Emergency.

National complains that it cannot fully insure the property or exclude third parties because it lacks title. This is not an emergency, it is the law. National is a pre-judgment creditor. National has no right under the Federal Credit Union Act or otherwise to acquire title to the Bridges' real estate assets before a trial on the merits simply because it asserts a right to relief in this lawsuit. Moreover, the existing Preliminary Injunction already completely protects National's interests by preventing any transfer or encumbrance of these properties.

## II. National Has Failed to Establish the Predicates Required by the Preliminary Injunction for a Real Property Trusteeship

The Preliminary Injunction explicitly details the triggers required before the National may seek control over the Bridges' real property. It states that the National may file a motion for a trusteeship only if: (1) Defendants fail to abide by the Order;

(2) Defendants fail to pay property-related bills and/or properly maintain the real property; or (3) National demonstrates that the value of the specific property may decline significantly without it taking control.

**A. No Evidence of Default or Non-Payment**

National does not—and cannot—contend that the Bridges have defaulted on any court-ordered financial obligation or failed to pay property-related expenses. While the National points to vague, unverified communications regarding unpaid invoices for the Alabama condominium, it has produced no evidence of an actual default, foreclosure, or threat of structural degradation. Speculation about future interest or fees cannot substitute for concrete evidence of present non-compliance.

**B. Failure to Evaluate Alternative Options**

National asserts that it must take title to maintain insurance on the Sleepy Hollow property. Yet, National has completely failed to show that this is the only available method to protect the asset. National has presented no evidence to show that alternative vacant-home insurance coverage is unavailable in the marketplace, or what the comparative costs would be relative to their exorbitant security measures. Moreover, National has failed to explain why 24/7 security is still needed since most of the valuable personal property has now been removed from the premises with the Bridges' cooperation and consent.

## III. National Seeks to Impose an Improper Seizure and Subverts Mississippi Homestead and Tenancy-by-the-Entirety Protections

National's demand for an outright conveyance of the titles to the Bridges' real properties via quitclaim deeds represents a flagrant subversion of Mississippi property law.

### A. Pre-Judgment Conveyance Would Destroy Vested Homestead Protections

The Sleepy Hollow residence is the Bridges' primary marital residence. Under Mississippi law, equity in homestead property is exempt equity. *See* Miss. Code Ann. § 85-3-21. Furthermore, pursuant to Miss. Code Ann. § 89-1-29, the consent of both spouses is required in order for a valid conveyance of homestead property. The Bridges' temporary absence from the Sleepy Hollow residence as an accommodation to National in this litigation does not constitute total abandonment.

### B. Tenancy by the Entirety Bars Seizure to Satisfy a Single-Spouse Judgment

The real properties are held by Chad and Leigh Bridges as Tenants by the Entirety. It is a bedrock principle of Mississippi law that property held in a tenancy by the entirety is exempt from the debts of only one spouse. National admits that Chad committed no active fraud or wrongdoing. *See* Miss. Code Ann. § 89-1-7; *Ayers v. Petro*, 417 So.2d 912, 916 (Miss. 1982). Under Mississippi's Uniform Fraudulent Transfer Act (UFTA), fraudulent conveyance principles do not apply to homestead property held as a tenancy by the entirety. *See* Miss. Code Ann. § 15-3-101(b)(providing that the term "asset" does not include "an interest in property held in tenancy by the entireties"). Thus, any judgment secured by National against Leigh

cannot be executed against tenancy by the entirety assets. *See, e.g., In re Pace*, 521 B.R. 124, 133 (N.D. Miss. Bankr. 2014)(noting that any non-exempt equity in the debtor's homestead may be administered for the benefit of creditors only to the extent of joint claims). At this stage of the litigation, National's claims against Chad are doubtful and disputed.

### C. Rule 64 Cannot Override Vested State Law Exemptions

Federal courts are bound by Rule 64, which limits pre-judgment property seizures strictly to the scope allowed by the laws of the state where they sit. *See* Fed.R.Civ.P. 64(a). Because Mississippi law provides for homestead and tenancy-by-the-entirety exemptions, this Court cannot utilize its equitable preliminary powers to divest Chad of his title as a prejudgment attachment.

## IV. National Fails to Cite any Precedent Authorizing a Pre-Judgment Conveyance of Title, and its Request for Such Extraordinary Relief Directly Offends Due Process

National's motion contains a glaring deficiency—it does not cite a single case where a federal court has ordered a defendant to convey ownership or sign over the legal title of their real property as part of a pre-judgment attachment. The authorities cited by National address standard attachment, oversight, and preservation—not the pre-trial divestment of legal title.

Forcing Chad Bridges to permanently divest himself of legal title to his home at this preliminary stage violates the core tenets of the Fifth Amendment's Due Process Clause. Due process guarantees that an individual cannot be deprived of property without a meaningful opportunity to be heard on the merits. A pre-judgment attachment is strictly a conservative measure to maintain the status quo.

By demanding an outright transfer of title now, National attempts to skip the entire judicial process.

## V. National has Unclean Hands, Using Exempt Assets as Tactical Leverage

Finally, National's complaints regarding Chad's refusal to sign quitclaim deeds expose an ongoing effort to leverage frozen, completely exempt assets to force his compliance. As set forth in Chad's recently filed Motion to Dissolve and/or Modify Preliminary Injunction, Chad's Raymond James IRA and Mississippi Government Employees' Deferred Compensation Plan are completely frozen. Chad has demonstrated that these retirement accounts were funded strictly through legitimate means with zero connection to the funds allegedly misappropriated by Leigh from Jackson. National refuses to concede this point and is now seeking to force Chad to sign-over his vested property rights.

Under Mississippi law, Chad's retirement accounts are completely exempt from pre- and post-judgment seizure. National's insistence on maintaining a freeze over these untainted, exempt accounts—leaving Chad with only $235 per week in unemployment benefits—constitutes a bad-faith effort to choke off his ability to live and pay for his legal defense, in direct violation of the principles set forth in *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987).

## VI. Alternative Proposal

Chad does not object to a limited, court-supervised management trusteeship over the real properties, provided that it is implemented as an asset-preservation mechanism rather than a punitive title-stripping tool. Accordingly, Chad will consent

to an order extending the trusteeship over the real property strictly conditioned upon the following terms:

1. **Retention of Title:** Legal title to all real properties shall remain strictly vested in the Bridges, and no deeds shall be executed during the pendency of this litigation.

2. **Preservation of Vested Rights:** The management trusteeship shall be entirely without prejudice to the Bridges' homestead rights, statutory exemptions, and tenancy-by-the-entirety protections under Mississippi law. A determination of the validity, scope, applicability and value of the Bridges' state law exemptions should be deferred.

3. **Reciprocal Equity (Unfreezing of Retirement Accounts):** Concurrent with the entry of the real property trusteeship order, National must immediately lift the freeze on Chad's legally exempt Raymond James IRA and MDC Plan accounts so he may afford basic living expenses, property upkeep obligations, and reasonable attorney's fees to defend this action.

4. **Adjustment of Obligations to Pay for Property-Related Expenses:** If the Bridges' real property assets will be subject to a trusteeship, then the Preliminary Injunction should be modified to require National to pay for the property-related expenses (insurance, taxes, maintenance, etc.) and/or such expenses should be proportional.

5. **Access to Properties**: During the pendency of this action, the Bridges should be permitted to have reasonable access to their properties with National's consent which shall not be unreasonably withheld.

## CONCLUSION

For the foregoing reasons, Defendant Chad Bridges respectfully requests that this Court DENY National's Urgent and Necessitous Motion for Imposition of a Trusteeship on Real Property [Doc. 33] in the form requested. Chad further prays that this Court enter an Order consistent with Chad's Alternative Proposal and/or grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this the 26th day of August, 2026.

**CHAD BRIDGES**

By: *<u>/s/ W. Thomas McCraney, III</u>*
W. Thomas McCraney, III

**<u>OF COUNSEL</u>:**

W. Thomas McCraney, III (MS Bar No. 10171)
William M. Quin II (MS Bar No. 10834
Sean R. Guy (MS Bar No. 100362
**MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
tmccraney@mmqnlaw.com
wquin@mmqnlaw.com
sguy@mmqnlaw.com

**CERTIFICATE OF SERVICE**

I, W. Thomas McCraney, III, Esq., do hereby certify that the foregoing pleading was filed electronically through the Court's CM/ECF system and served electronically on all parties enlisted to receive service electronically.

SO CERTIFIED, this the 26th day of August, 2026.

*/s/ W. Thomas McCraney, III*
W. Thomas McCraney, III