**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

NATIONAL CREDIT UNION ADMINISTRATION BOARD, in its capacity as conservator of Jackson Area Federal Credit Union,

*Plaintiff*,

v. Case No. 3:26-CV-343-DPJ-RPM

LEIGH BRIDGES, CHAD BRIDGES and TINA FUNEZ

*Defendants*.

---

**Defendant Leigh Bridges' Motion to Amend or Modify the Preliminary Injunction**

---

Defendant Leigh Bridges ("Leigh") hereby files this Memorandum Brief in Support of her Motion to Amend and/or Modify the Preliminary Injunction entered in this matter as follows:

## INTRODUCTION AND BACKGROUND

Plaintiff National Credit Union Administration Board ("National") filed this civil action on May 14, 2026, in its capacity as the conservator of Jackson Area Federal Credit Union ("Jackson"). Doc. 1. National alleges that Jackson's former CEO, Defendant Leigh Bridges ("Leigh"), "misappropriated at least $51 million dollars in funds from [Jackson]." Doc. 1 at p. 5.

1.

On May 15, 2026, the Court granted National's Motion for a Temporary Restraining Order ("TRO") without notice. Doc. 7. The TRO, which was later extended by the Court, essentially placed a blanket "freeze" on all of the Bridges' financial

accounts ostensibly to prevent the potential dissipation of funds allegedly misappropriated from Jackson by Leigh.

2.

On June 15, 2026, National filed an Amended Complaint which added Tina Funez as a defendant. Doc. 17. On July 7, 2026, the Court entered an Order converting the TRO to a Preliminary Injunction as to all defendants.

3.

The Preliminary Injunction maintains the “freeze” on all of the defendants’ financial accounts and subjects them to a “prejudgment attachment” in favor of National. Until the entry of a final judgment, it preliminarily enjoins and restrains the defendants from transferring or disposing of any funds in any financial accounts in which they have an interest (either individually or jointly). Doc. 20 at p. 2.

4.

The Preliminary Injunction also imposes certain financial obligations which are primarily directed at Chad. It directs that, during the pendency of this litigation, “defendants” are required to pay insurance premiums and other expenses in order to maintain, operate and preserve certain properties, including the Bridges’ personal residence. Id. at p. 8. As to the source of funds for such obligations, the Order states that defendants “may use income derived from the salary of Chad Bridges” for basic living expenses, attorney’s fees and property-related expenses. Id. at p. 10.

Until recently, Chad had been employed since 2004 with the Mississippi Insurance Department (“MID”), and in 2026, his annual salary was approximately $120,000. Shortly after this lawsuit was filed and became public, MID terminated

Chad's employment on or about June 16, 2026. Chad is currently fifty-five (55) years old. Although he has been seeking other employment opportunities, Chad has not yet secured another full-time job. At present, Chad is receiving unemployment benefits of $235 per week which will continue for a maximum period of 26 weeks (ending in or around December, 2026). See Ex. 1. Therefore, as of this date, your movant, Leigh Bridges, has no income whatsoever.

5.

ARGUMENT

District courts have broad equitable power to modify a preliminary injunction "when the legal or factual circumstances justifying the injunction have changed." Bear Ranch, LLC. v. Heartbrand Beef, Inc., 885 F.3d 794, 803 (5th Cir. 2018). To dissolve a preliminary injunction, the movant must show that changed circumstances warrant relief. See Scionti v. Dornfried, 137 F.3d 1351 (5th Cir. 1998). If such a change is established, the district court should examine the motion to dissolve under the same standard that applies in deciding whether to grant an injunction in the first instance. See Chamber of Commerce of United States v. Consumer Protection Financial Protection Bureau, 767 F. Supp.3d 357, 362 (N.D. Tex. 2024). The familiar quartet is the likelihood of success on the merits, the threat of irreparable injury to the party seeking interim relief, the equities and the public interest.

6.

**Change of Circumstances**

When the Court entered the Preliminary Injunction, it was predicated on a factual assumption that Chad was employed and that his salary would be available to

pay financial obligations including property-related expenses, attorney's fees and basic living expenses. Those circumstances have materially changed. Chad has been terminated by MID and is no longer receiving a regular salary, relief from the Preliminary Injunction is warranted on the basis of financial need.

7.

**The Preliminary Injunction should be modified/amended as to Leigh's retirement account.**

In fashioning appropriate injunctive relief, federal courts must be mindful of Fed.R.Civ.P. 64 which permits pre-judgement seizure of a defendant's property only to the extent allowed by the laws of the state where the court is located. See A.T.N. Indus., Inc. v. Gross, 632 Fed.Appx. 185, 192 (5th Cir. 2015); see also Fed.R.Civ.P. 69(a)(execution on a money judgment "must accord with the procedure of the state where the court is located"). Under Mississippi law, retirement accounts are exempt from pre-and/or post-judgment seizure under execution or attachment. See Miss. Code. Ann. § 85-3-1(e). This exemption expressly applies to "assets held in or monies payable to the participant or beneficiary from" a deferred compensation plan under § 457(b) and IRAs.

8.

Under Mississippi law, Leigh's retirement account is completely exempt from attachment or garnishment by National. Therefore, placing a "freeze" over these accounts and prohibiting Leigh from accessing these funds during the pendency of this litigation serves no legitimate or lawful purpose.

To maintain a restraint on assets via a preliminary injunction, the movant must establish a substantial likelihood of success on the merits and that it will suffer

irreparable injury. National cannot sustain this burden as Leigh's retirement account. The funds in Leigh's retirement accounts are legally exempt and are not traceable to any funds allegedly misappropriated from her, National has a zero percent likelihood of success in ever attaching or executing upon these accounts to satisfy a judgment.

9.

Unless some relief is granted from the Preliminary Injunction, Leigh simply does not have the means to pay her basic living expenses (including the obligations imposed by the Court) or her attorney's fees to defend herself against this action. In Federal Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554, 564-65 (5th Cir. 1987), the Fifth Circuit provided "some observations to guide the district court" in modifying a preliminary injunction which prohibited former officers of a failed savings and loan association from potentially dissipating ill-gotten assets. Although Dixon did not directly address retirement account exemptions under applicable state law, the Court's "observations" are instructive here regarding the impropriety of an injunction which effectively cripples a defendant's ability to pay for basic living expenses and attorney's fees.

Noting that "[t]he basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here," the Court concluded that "some kind of allowance must be made to permit each defendant to pay reasonable attorneys' fees." Dixon, 835 F.2d at 565. The Court also concluded that "the district court should allow the defendants to demonstrate any legitimate claim they have to the frozen assets." Id. That is, if frozen assets are subject to an exemption and "were acquired at time or through such means that there is no likelihood that they were

acquired from ill-gotten [assets],” then relief would also be warranted to that extent. Id.

10.

Here, Leigh has demonstrated that she has a legitimate claim to her frozen retirement accounts. Leigh has shown that these assets are exempt from seizure under Mississippi law and were acquired at a time and through such means as there is no likelihood that they were acquired with funds allegedly misappropriated from Jackson by Leigh. Moreover, even if this were not the case, relief from the Preliminary Injunction must be granted to at least give Leigh the ability to pay her expenses and attorney’s fees.

11.

**Good Faith Certification**

The undersigned certifies that, prior to filing this motion and as required by Paragraph 19 of the Preliminary Injunction, she attempted on several occasions to confer in good faith with opposing counsel about this issue. However, counsel has been unable to reach a satisfactory resolution.

12.

**CONCLUSION**

For these reasons, Leigh respectfully requests that this Court: (1) grant her Motion to Dissolve and/or Modify the Preliminary Injunction; (2) order that the freeze on Leigh’s 401K or at $291,000.00 to $567,000.00 and be immediately lifted and dissolved; (3) direct National to immediately notify the financial institutions of the dissolution of the freeze upon entry of this Court's Order; and (4) grant such other and

further relief as the Court deems just and proper.

Respectfully submitted, this the 10th day of September 2026.

**LEIGH BRIDGES**

By: */s/ John M. Colette*
John M. Colette | MSB 6376

Jeffrey M. Graves | MSB 104327
**JOHN M. COLETTE, PLLC**
501 S. State Street
Jackson, Mississippi 39201
601-355-6277 Office
601-355-6283 Facsimile
colettelawms@gmail.com

*Attorneys for Leigh Bridges*

**CERTIFICATE OF SERVICE**

I, John M. Colette, do hereby certify that I have on this date filed the foregoing with the clerk, and have served a true and correct copy of the same via email on all parties of record.

THIS, the 10th day of September 2026.

*/s/ John M. Colette*
John M. Colette