UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NATIONAL CREDIT UNION
ADMINISTRATION BOARD,
In its Capacity as Conservator of
Jackson Area Federal Credit Union — PLAINTIFF

VS. — CIVIL ACTION NO. 3:26-cv-343-DPJ-RPM

LEIGH BRIDGES, CHAD BRIDGES
and TINA FUNEZ — DEFENDANTS

---

**REPLY IN SUPPORT OF URGENT AND NECESSITOUS MOTION TO DISSOLVE AND/OR MODIFY PRELIMINARY INJUNCTION**

---

Defendant Chad Bridges ("Chad") hereby files this Reply in Support of his Urgent and Necessitous Motion to Dissolve and/or Modify Preliminary Injunction, as follows:

## INTRODUCTION

In its Response, National does not dispute that Chad's circumstances have materially changed since the Court entered the Preliminary Injunction Order. Nor does National dispute that Chad's retirement accounts are exempt from attachment under Mississippi law. Despite conceding these points, and Chad's showing of financial need, National urges the Court to maintain the "freeze" on his retirement accounts and prevent him from accessing these funds to pay his living expenses and attorneys' fees. National arguments are plainly at odds with *Fed. Sav. & Loan v. Dixon*, 835 F.2d 554, 564-65 (5th Cir. 1987) and should be rejected by this Court.

## ARGUMENT

### I. National Cannot Show a Substantial Likelihood That It Will Ever Successfully Reach Chad's Exempt Retirement Accounts

#### A. National's Fraudulent-Transfer Theory Targets Specific, Identified Property — Not Chad's Untainted Retirement Savings

National points to various properties and benefits that Chad received as an alleged fraudulent transferee of Leigh. Whatever the merits of that theory, none of this has anything to do with Chad's exempt retirement accounts. National has not presented, and cannot present, any proof whatsoever that a single dollar was ever transferred from Leigh, from JAFCU or from any JAFCU-linked account into Chad's MDC Plan or IRA. To the contrary, the undisputed evidentiary record shows that Chad's MDC Plan was funded exclusively through payroll deferrals from his own salary at the Mississippi Insurance Department dating back to 2004, with no deposits from any outside source, and that his IRA was funded through the rollover of a 401(k) and pension plan from his prior employer, Blue Cross & Blue Shield of Mississippi, where he worked from 1992 to 2003 — years before Leigh's alleged misappropriation from JAFCU even began.

Faced with that record, National's only response is a footnote speciously claiming that a document provided to its counsel by Chad's counsel shows "a significant amount was in the IRA prior to the BCBS funding," and that it "does not know the source of those funds, and thus cannot rule out that they came from JAFCU." Doc. 48 at p. 5 n.3. The referenced document is a summary of the IRA statements from 2015 to the present and will be presented to the Court for an *in-*

*camera* review, if needed. However, the actual statements, upon which the summary is based, have already been provided to the Court and to National's counsel under seal. As Chad explained in his affidavit, the initial rollover deposit to his IRA was from his 401k and occurred in 2003 when he left Blue Cross.[1] As reflected on the actual statements, the only other deposit to Chad's IRA occurred in 2025 when Blue Cross terminated its pension plan and that lump-sum distribution was likewise rolled-over into his IRA. Clearly, National's unsupported speculation about the funding of Chad's IRA is insufficient to maintain the freeze on this account. But even if it were, National has not presented any evidence or argument to maintain the freeze on Chad's MDC account.

In *Dixon,* the Fifth Circuit noted that, as a "general rule," a preliminary injunction freezing a defendant's assets "is not permissible to secure post-judgment legal relief in the form of damages." *Dixon*, 835 F.2d at 560. In contrast to legal relief, *Dixon* recognizes that a district court has broad equitable power to freeze assets to maintain the status quo where a federal statue provides an equitable right to relief. However, even in this situation, to assure that "all the frozen assets relate to equitable remedies, such as restitution and recission," the district court must consider, in fashioning appropriate injunctive relief, whether the defendant has a "legitimate claim" to those assets. *Id.* at 565. Relief from a freeze order should be granted if the defendant is able to show that the frozen assets "were acquired at a

[1] National alleges that Leigh's misappropriation from JAFCU occurred during the time-period 2015 to 2026. Thus, based on National's own pleadings, there could not have been any deposits to Chad's IRA occurring prior to 2015 that might be traceable to ill-gotten funds from JAFCU.

time or through such means that there is no likelihood that they were acquired from the ill-gotten [funds]." *Id.*

Chad has made this showing as to his retirement accounts, and he is therefore, entitled to relief from the freeze order to this extent. Since National has not shown, and cannot show, that any deposits to Chad's retirement accounts are traceable to any ill-gotten funds from JAFCU, National is not entitled to a pre-judgment attachment simply to secure a potential money judgment predicated on a contested fraudulent transfer theory relating to other assets. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 37 (1989)(holding that action to recover fraudulent transfers are deemed actions at law if the plaintiff is seeking a money judgment and cannot be recharacterized as an action seeking equitable relief). As noted in *Dixon*, "[s]uch an injunction to secure future payment of possible money damages would be in the nature of a 'prejudgment attachment' subject to Fed.R.Civ.P. 64, and through that rule to the strictures of state law." *Dixon*, 835 F.2d at 560. Here, the strictures of Mississippi law exempt Chad's retirement accounts from pre- or post-judgment attachment. *See* Fed.R.Civ.P. 69. This means that, even if National is successful in obtaining a money judgment against Chad on a fraudulent transfer theory, it will never reach his exempt retirement accounts to collect.

### B. Section 1787(b)(2)(G) Does Not Preempt Mississippi's Exemption for Retirement Accounts

National argues that the reference in § 1787(b)(2)(G) to "the assets of any person" preempts state law exemptions such as those provided by Miss. Code Ann. §

85-3-1(e). National boldly asserts this proposition, but it is not supported by the text of the statute nor any relevant caselaw.

Section 1787(b)(2)(G), captioned "Attachment of assets and injunctive relief," provides that on the request of NCUAB, acting as conservator, a district court may issue an order under Rule 65, "including an order placing the assets of any person designated by the Board under the control of the court and appointing a trustee to hold such assets." Subparagraph (H) modifies the Rule 65 standard by dispensing with the ordinary showing that injury is "irreparable and immediate." Neither subparagraph references state law exemptions such as homestead rights or retirement account protections. There is no "notwithstanding any provision of State law" clause of the kind Congress has used elsewhere when it intended to override state exemptions. That textual silence weighs strongly against reading an implied, blanket preemption into subparagraph (G) itself.

None of the cases cited by National address state law exemptions for retirement accounts. *Cruce* addressed whether the RTC could freeze a non-debtor spouse's one-half interest in jointly held real property. *RTC v. Cruce*, 972 F.2d 1195, 1202-03 (10th Cir. 1992). *Calhoun* addressed the FDIC's statutory right of offset against a debt owed directly to the failed institution — a fundamentally different collection mechanism than a prejudgment freeze imposed to secure a contingent future judgment on a contested fraudulent-transfer theory. *Calhoun v. FDIC*, 653 F. Supp. 1288, 1294 (N.D. Tex. 1987). And *Zovko*, *Jurcevic*, and *Garner* establish only

that § 1787(b)(2)(G) and its analogues can reach the assets of a person who did not personally commit fraud against the credit union.[2]

*Drye* is not to the contrary. The federal tax lien statute at issue there, 26 U.S.C. § 6321, reaches "all property and rights to property" of a delinquent taxpayer by its express terms, and Congress separately enumerated in 26 U.S.C. § 6334 the specific, narrow categories of property exempt from IRS levy — a scheme reflecting over a century of settled law holding that federal tax liens have unique supremacy over state-created exemptions. *See Drye v. United States*, 528 U.S. 49, 59 (1999). Section 1787(b)(2)(G) contains no comparable "all property" language, no companion provision identifying (and thereby limiting) exempt property, and no comparable historical pedigree of overriding state exemptions for retirement savings. The tax-lien analogy simply does not fit.

## II. Chad Will Suffer "Cognizable Harm" if his Retirement Accounts Remain Frozen

National argues Chad cannot show harm from being unable to pay his attorneys because he "already has attorneys" representing him. That gets *Dixon* backwards. *Dixon*'s concern is that an asset freeze, left unchecked, forces defense counsel into the position of financing a civil defendant's case indefinitely and without compensation — precisely because "the basis of our adversary system is threatened

[2] *Zovko v. NCAUB*, 2014 WL 12889793 (N.D. Ohio 2014) involved a preliminary injunction issued under § 1787(b)(2)(G) to attach certain real properties, not exempt retirement accounts. In any event, *Zovko* actually supports Chad's position because, in that case, NCUAB demonstrated that the real properties were "likely acquired . . . with [ill-gotten] loan proceeds from [the credit union]." *Zovko*, at * 2. Here, NCUAB has not demonstrated, nor can it demonstrate, that Chad's retirement accounts are traceable to any ill-gotten funds from JAFCU.

when one party gains control of the other party's defense." *Dixon*, 835 F.2d at 565. That Chad's counsel have continued to represent him despite the freeze does not mean the freeze causes no harm; it means counsel have absorbed that harm so far. *Dixon* requires "some kind of allowance . . . to permit each defendant to pay reasonable attorneys' fees," 835 F.2d at 565 — it does not condition that allowance on counsel being forced to the brink of withdrawal.

Chad's request for relief also rests independently on the material change in his financial circumstances — the loss of the salary income on which the Preliminary Injunction was expressly predicated. National does not dispute that Chad lost his job in June 2026, that his unemployment benefits of $235 per week will expire in or around December 2026, or that he has secured no other employment. National instead speculates that Chad "must be" using frozen funds to live because he has not explained otherwise and faults him for not detailing any family loans or credit-card debt he might be incurring instead. But incurring debt or depending on family to survive an asset freeze premised on income that no longer exists is itself a real and mounting hardship — not evidence that no hardship exists.

The Preliminary Injunction assumed Chad's MID salary would fund the Bridges' living and property expenses. Doc. 20 at 10. That assumption is no longer true, and National does not contend otherwise. Chad is not asking this Court to disturb the property-maintenance mechanism; he is asking for access to his own exempt retirement savings because the income source the injunction contemplated no longer exists.

WHEREFORE PREMISES CONSIDERED, for these reasons, Chad's Motion to Modify and/or Dissolve the Preliminary Injunction as to his IRA and MDC Plan account should be GRANTED.

RESPECTFULLY SUBMITTED, this the 11th day of September, 2026.

**CHAD BRIDGES**

By: */s/ W. Thomas McCraney, III*
W. Thomas McCraney, III

**OF COUNSEL:**

W. Thomas McCraney, III (MS Bar No. 10171)
William M. Quin II (MS Bar No. 10834
Sean R. Guy (MS Bar No. 100362
**MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
tmccraney@mmqnlaw.com
wquin@mmqnlaw.com
sguy@mmqnlaw.com

**CERTIFICATE OF SERVICE**

I do hereby certify that the foregoing pleading was filed electronically through the Court's CM/ECF system and served electronically on all parties enlisted to receive service electronically.

This the 11th day of September, 2026.

*/s/ W. Thomas McCraney, III*
W. Thomas McCraney, III