UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

---------------------------------------------------------------------X

NATIONAL CREDIT UNION ADMINISTRATION BOARD, in its capacity as conservator of Jackson Area Federal Credit Union,

Plaintiff,

v.

LEIGH BRIDGES, CHAD BRIDGES, and TINA FUNEZ,

Defendants.

Case No.: 3:26-cv-343-DPJ-RPM
Hon. Daniel P. Jordan
Hon. Robert P. Myers, Jr.

---------------------------------------------------------------------X

**DECLARATION OF ETHAN MEYER**

I, Ethan Meyer, declare pursuant to 28 U.S.C. § 1746 the following to be a true and correct:

1. I am a Problem Case Offer at the National Credit Union Administration ("NCUA"), headquartered at 1775 Duke Street, Alexandria, Virginia 22314. The NCUA is an executive branch federal agency statutorily responsible for regulating, supervising, and insuring the accounts of credit unions, which are financial institutions analogous to banks. As part of implementing its statutory duties, the NCUA examines credit unions to evaluate their compliance with law and regulation.

2. As part of my duties as Problem Case Officer, I request and review documents provided by credit union staff and their various vendors, including a credit union's bank account information. As part of my review of a credit union's documents, I investigate whether fraud is suspected; this review includes analyzing credit card statements, among other records as well.

3. The statements in the paragraphs below are based on my personal knowledge, information from records and audio recordings from American Express, and my own review of those records. One such record, attached to this declaration as Exhibit 1, is titled "Certificate of Authenticity of Business Records," which is dated July 23, 2026 and signed by Assistant Custodian of Records Vanessa Bonet. Ms. Bonet certifies that records produced are original or duplicates of original copies of records held in the custody of American Express. Exhibit 1. She further states that the records were all kept in the regular course business, that it was the regular practice of American Express to make such records, and that the records were made at or near the time of the occurrence of the matters set forth, by personnel with knowledge of the information.

4. One American Express record that I reviewed is an audio recording of a caller who identified herself as "Leigh Bridges." On that audio recording, the caller provided personal identifying information to verify herself to an American Express representative. During the call, the representative explains that Ms. Bridges' account was frozen due to a fraud alert triggered by an attempt to redeem millions of points in the form of gift cards on Leigh Bridges' American Express card. The representative states that the value of these gift cards was approximately $200,000. Ms. Bridges confirms that the redemption requests were made by her and were not the product of fraud. Following Ms. Bridges' confirmation, the representative explained that freeze would be lifted and that Ms. Bridges would be able to redeem the points in the form of gift cards.

5. I further reviewed five alerts relating to Ms. Bridges' American Express account dated May 30, 2026, June 3, 2026[1], June 10, 2026, and July 3, 2026. Ex. 2. These alerts indicate redemptions in the form of seventeen gift cards named "American Express (Classic Gold)," "Apple Gift Card," "T.J. Maxx Multi-Brand," and "American Express (Pet)." *Id.*

[1] The records indicate two alerts for gift card redemptions for this date.

6. I know from my experience investigating fraud at financial institutions that gift cards can be used to conceal spending. Some gift cards, such as American Express (Gold Card) gift cards, are equivalent to a debit card; they may be used to make purchases from any vendor who accepts debit card transactions. Because gift cards are not associated with an individual account, the user can spend money even if their financial accounts are frozen. This type of spending is difficult, if not impossible, to trace and track.

7. I also know from my experience investigating fraud at financial institutions that persons will transmit money or property to foreign jurisdictions in order to hide the money or property from creditors in the United States or in an attempt to protect it from the United States' legal process.

8. I have learned through discussions with other NCUA employees working this matter that Leigh Bridges, Tina Funez, and Chad Bridges were visiting the Utila dwelling after Leigh Bridges after Leigh Bridges admitted misappropriating JAFCU funds to two NCUA examiners and two JAFCU board members in April 2026 and before being served with the temporary restraining order at the end of May/early June 2026.

9. I have also learned through discussions with other NCUA employees working this matter that Tina Funez quickly left the condominium located at 257 Eastbrooke St, Jackson, Mississippi, when she was named as a defendant in this litigation through the amended complaint.

10. I have further learned through discussions with other NCUA employees working this matter that during the time that agents of the NCUA were inventorying items at the residence 3826 Sleepy Hollow, Jackson, Mississippi, Chad Bridges made multiple trips to that residence, retrieved certain items, and left with those items in his vehicle.

ETHAN MEYER

Digitally signed by ETHAN MEYER
Date: 2026.09.14 13:37:42 -04'00'

Ethan Meyer
Problem Case Officer
National Credit Union Administration