UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION
-------------------------------------------------------------------X

NATIONAL CREDIT UNION ADMINISTRATION BOARD, in its capacity as liquidating agent of Jackson Area Federal Credit Union,

Plaintiff,

v.

LEIGH BRIDGES, CHAD BRIDGES, and TINA FUNEZ,

Defendants.

Case No.: 3:26-cv-343-DPJ-RPM
Hon. Daniel P. Jordan
Hon. Robert P. Myers, Jr.

-------------------------------------------------------------------X

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM CONCERNING DEFENDANTS' MOTIONS TO MODIFY PRELIMINARY INJUNCTION**

Plaintiff, the National Credit Union Administration Board ("NCUAB"), acting in its capacity as liquidating agent of Jackson Area Federal Credit Union ("JAFCU"), submits the following supplemental memorandum of law concerning Defendant Chad Bridges' Urgent and Necessitous Motion to Dissolve and/or Modify Preliminary Injunction, ECF No. 36, and Defendant Leigh Bridges' Motion to Amend or Modify the Preliminary Injunction, ECF No. 50.

## SUPPLEMENTAL POINTS

Chad Bridges and Leigh Bridges argue that their retirement accounts are composed of untainted funds, that those accounts are exempt from attachment under Miss. Code. § 85-3-1(e), and that the funds in those accounts should be unfrozen. *See* ECF No. 37, Chad's mem. 5-7; ECF No. 51 Leigh's mem. 4-5. Importantly though, even if 12 U.S.C. § 1787(b)(2)(G) does not permit the NCUAB to have a prejudgment attachment on their retirement accounts, it does not necessarily follow that the Bridges can access their pre-retirement withdrawals. Seven courts of

appeal have held that ERISA "does not prevent the attachment or garnishment of funds after a pension plan has paid them to retirees." *NLRB v. HH3 Trucking, Inc.*, 755 F.3d 468, 470 (7th Cir. 2014); *see Hoult v. Hoult*, 373 F.3d 47, 53-55 (1st Cir. 2004); *Robbins v. DeBuono*, 218 F.3d 197, 203 (2d Cir. 2000); *Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville*, 16 F.3d 52, 54–56 (3d Cir. 1994); *Central States Pension Fund v. Howell*, 227 F.3d 672, 678-79 (6th Cir. 2000); *Wright v. Riveland*, 219 F.3d 905, 919-21 (9th Cir. 2000); *Guidry v. Sheet Metal Workers National Pension Fund*, 39 F.3d 1078, 1081-83 (10th Cir. 1994) (en banc).

The general logic in these cases is that ERISA provides that "'benefits provided under the [retirement] plan may not be assigned or alienated[,]' . . . . [but] [i]t does not say anything about what happens to the money after the plan distributes it to beneficiaries." *HH3 Trucking*, 755 F.3d at 470 (quoting 29 U.S.C. § 1056(d)(1)). Other federal statutes, however, such as the Veterans Benefits Act and the Social Security Act, do provide explicit protections after the money is distributed to the beneficiary. *See id.* at 470-71; *see also* 38 U.S.C. § 5301(a) (prohibiting attachment of benefits "either **before or after** receipt by the beneficiary") (emphasis added); 42 U.S.C. § 407(a) (providing that "none of the moneys **paid** or payable . . . under this subchapter shall be subject to . . . attachment") (emphasis added). The absence of such language in ERISA thus indicates Congress' intent not to protect funds after they leave the retirement account. *See HH3 Trucking*, 755 F.3d at 471-72.

There is no reason to believe that the Fifth Circuit would rule differently concerning the protection of funds after leaving an ERISA retirement account as applied here. *See In re Sinclair*, 417 F.3d 527, 532 (5th Cir. 2005) (holding that Louisiana "disposable earnings exemption" did not protect funds once paid out due to the absence of language specifically addressing paid-out funds). Even the one court of appeal finding ERISA retirement distributions

were protected from creditors still observed that if "an employee elects to draw on [his] ERISA plan prior to [his] retirement, [he] forfeits the protection provided by the Act." *United States v. Smith*, 47 F.3d 681 (4th Cir. 1995). Indeed, "the goal of ERISA's prohibition of assignment [and alienation] of . . . benefits is to 'insure that the employees' accrued benefits are actually available for retirement purposes[,]'" *Texas Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Ent. Co.*, 105 F.3d 210, 215 (5th Cir. 1997); it is not to protect early withdrawals. Accordingly, to the extent ERISA protects Leigh Bridges' retirement, all federal courts of appeals decisions point to the conclusion that the funds are unprotected once leaving the account as an early distribution. As those funds will be unprotected, they will be subject to the asset freeze, ECF No. 20, Prelim. Inj. ¶¶ 2-4, the same as the funds in the Bridges' other accounts.

Mississippi law is not properly read to protect early withdrawals from retirement accounts either. As one state court observed in finding that pension funds were no longer protected after distribution, "[b]oth federal and state cases generally indicate that statutorily exempt funds, whatever their predistribution nature, may be garnished after they come into the personal possession of the beneficiary, including deposit into a personal account, unless the legislature provides some express language to the contrary." *Anthis v. Copland*, 270 P.3d 574, 580 (Wash. 2012). Other courts have held similarly. *See In re Miller*, 435 B.R. 561, 568 (Bankr. N.D. Ind. 2010) (Indiana exemptions to levy and attachment); *Whitwood, Inc. v. S. Blvd. Prop. Mgmt. Co.*, 701 N.W.2d 747 (Mich. App. 2005) (Michigan exemptions to levy and attachment); *see also In re Sinclair*, 417 F.3d at 532 ("The [Louisiana] disposable earnings exemption . . . does not specifically refer to benefits that have been received . . . . Therefore, consistent with the statute's plain language, we conclude that the disposable earnings exemption does not protect wages once they have been paid.").

As relevant here, Mississippi law provides that "[t]here shall be exempt from seizure under execution or attachment . . . Assets held in, or monies payable to the participant or beneficiary from [various retirement accounts]." Miss. Code § 85-3-1(e). Although no Mississippi court appears to have addressed this issue, the logic employed in the cases above leads to the conclusion that funds become unprotected once leaving the account. Miss. Code § 85-3-1(e) refers only to "Assets held in, or monies payable." Payable refers to "(Of a sum of money or a negotiable instrument) **that is to be paid**." *Payable*, Black's Law Dictionary (12th ed. 2024) (emphasis added). The language is therefore clearly different than the language in the Social Security Act, 42 U.S.C. § 407(a), which provides that "none of the moneys **paid or payable** . . . under this subchapter shall be subject to . . . attachment") (emphasis added).

"Because that language covers funds 'paid' as well as money 'payable,' the Supreme Court concluded that it applies to funds that can be traced to Social Security benefits." *HH3 Trucking, Inc.*, 755 F.3d at 471 (citing *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973)); *see Tom v. First Am. Credit Union*, 151 F.3d 1289, 1293 (10th Cir. 1998) ("The Social Security Act's anti-assignment provision explicitly protects all 'moneys paid or payable,' 42 U.S.C. § 407(a), thus making clear that its aegis extends not only to the future right to receive payments but also to any payments that a beneficiary has already received."); *Barnes v. Dep't of Hum. Servs.*, 42 So. 3d 10, 18 (Miss. 2010) (Waller, J., concurring) ("[Section 407(a)] simply prohibits garnishment or attachment of those funds to satisfy a child-support award, even after it is paid to the recipient.") *and id.* at 18, n.9 (emphasizing the word "paid" in § 407(a)). Under this logic, the absence of the word "paid" in Miss. Code § 85-3-1(e) evidences a legislative intent to protect funds in the retirement account only until such funds are withdrawn.

Because the funds leaving the retirement accounts will become "re-frozen" even if the Court rules that the 12 U.S.C. § 1787(b)(2)(G) attachment does not extend to retirement accounts, the Court need not decide that issue at this time. Instead, the Court must decide whether the Bridges may utilize frozen funds to provide for their living expenses and attorneys' fees. *See FSLIC v. Dixon*, 835 F.2d 554, 5615 (5th Cir. 1987). The NCUAB's position is that as to attorneys' fees, *Dixon* requires a movant to make a threshold showing that release of frozen funds is necessary to secure counsel—a showing that neither Leigh nor Chad has made. *See* ECF No. 48, NCUAB Opp. 11-12, ECF No. 58, NCUAB Opp. 17-18. Moreover, a movant asking to utilize frozen funds for attorneys' fees or living expenses must address the following factors: "(1) the likelihood that plaintiff will prevail on the merits; (2) whether defense counsel was aware of the possibility that the court might deny or limit attorney fees; (3) the availability of assets for consumer redress; (4) a defendant's access to alternative assets; and (5) the reasonableness of the funds requested for legal fees and living expenses." *FTC v. Am. Tax Serv. LLC*, No. 2:25-CV-01894-GMN-EJY, 2025 WL 3564724, at *2 (D. Nev. Dec. 11, 2025).

Neither Leigh nor Chad has addressed any of these factors in substance, which the NCUAB has explained in its oppositions. *See* ECF No. 48, NCUAB Opp. 13-16, ECF No. 58, NCUAB Opp. 19-21. Most notably perhaps, neither defendant has addressed how the NCUAB will not prevail on the merits of its claims against them in the Amended Complaint. Accordingly, the issue of whether frozen funds should be utilized to pay the Bridges' expenses has not been adequately briefed, but must be briefed even if their retirement accounts are not subject to the NCUAB's attachment. Consequently, if the Defendants believe that they must utilize frozen funds to pay expenses, the Defendants should make that argument through proper

motions addressing the five factors identified in *Am. Tax Serv.* so that the NCUAB can respond in earnest to any arguments by the Defendants.

**CONCLUSION**

For the reasons explained above, the NCUAB requests that the Court require briefing on the issue of utilization of frozen funds before permitting Defendants to utilize any funds for payment of expenses.

Respectfully submitted,

November 4, 2026

*/s/ Alysson Mills*

Alysson Mills, Mississippi Bar No. 102861

650 Poydras Street Suite 1525
New Orleans, Louisiana 70130
t/f: 504-586-5253
alysson@alyssonmills.com

*Counsel for Plaintiff*
NATIONAL CREDIT UNION ADMINISTRATION BOARD,
acting in its capacity as conservator of JACKSON AREA FEDERAL CREDIT UNION

CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of filing to all counsel of record.

*/s/ Alysson Mills*

Alysson Mills