UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NATIONAL CREDIT UNION ADMINISTRATION BOARD, in its capacity as conservator of Jackson Area Federal Credit Union, PLAINTIFF

VS. CIVIL ACTION NO.: 3:26-cv-343-DPJ-RPM

LEIGH BRIDGES, CHAD BRIDGES and TINA FUNEZ, DEFENDANTS

---

# CHAD BRIDGES' MEMORANDUM BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY, CLARIFY, AND ENFORCE PRELIMINARY INJUNCTIONS

---

Defendant Chad Bridges ("Chad") files this Memorandum Brief in Opposition to Plaintiff's Motion to Modify, Clarify, and Enforce Preliminary Injunctions [Doc 53], as follows:

## INTRODUCTION

Plaintiff National Credit Union Administration Board ("National") asks the Court to rewrite the Preliminary Injunction in five ways: (1) to bar every Defendant from using frozen funds for living expenses until he or she proves the use is "absolutely necessary"; (2) to require each Defendant to "reimburse" National for any frozen funds used for living expenses—including, expressly, out of retirement accounts the Court may later release; (3) to declare Chad's accrued leave from his former State employment frozen "property"; (4) to compel the turnover of gift cards; and (5) to require an inventory of personal property. Doc 54 at 6–17. Most of the

motion concerns conduct attributed to Leigh Bridges ("Leigh")—the redemption of credit-card points for gift cards and the spending of them. *Id.* at 5–6.

As to Chad, the motion is more notable for what National concedes. It concedes that Chad has lost his State employment, that his only income is $235 per week in unemployment benefits, and that "all of Chad Bridges' accounts are frozen." *Id.* at 3–4. It concedes that *FSLIC v. Dixon*, 835 F.2d 554 (5th Cir. 1987), governs the release of frozen funds for living expenses and fees, and that *Dixon* asks whether a defendant can pay "from new or exempt assets." Doc 54 at 7, 9. And it describes the Defendants' retirement accounts as "exempt property" that they may eventually be "permitted to access." *Id.* at 9–10. Those concessions cannot be squared with the positions National has taken in opposing the release of Chad's IRA and MDC Plan. They confirm that the Court should release those accounts, permit Chad to use them for reasonable living expenses and attorney's fees, and deny National's request to convert exempt retirement savings into a "reimbursement" fund for National. And because a ruling on Chad's pending motion [Doc 36] will resolve or substantially narrow most of what National seeks as to Chad, the Court should decide that motion first.

## ARGUMENT

### I. The Court Should Resolve Chad's Pending Motion First.

Much of the relief National seeks depends on the question already pending before the Court in Chad's Urgent and Necessitous Motion to Dissolve and/or Modify Preliminary Injunction [Doc 36]: whether his IRA and MDC Plan, which are exempt under Mississippi law and untraceable to Leigh's alleged misappropriation, should

be released from the freeze. Because a ruling on Chad's motion will resolve, or substantially narrow, most of what National asks for as to Chad, the Court should decide his motion before, or together with, National's requests for additional restrictions. In the meantime, although he does not agree that such a requirement should apply to his exempt retirement funds, Chad is willing, as an interim measure, to deposit any retirement funds he withdraws for living expenses and attorney's fees into a designated account and provide monthly statements to National.

## II. National's Motion Confirms That Chad's Retirement Accounts Are Exempt and Should Be Released.

### A. National's motion treats the retirement accounts as exempt assets available to Chad—contrary to the positions it has taken elsewhere.

In arguing that Defendants must exhaust other resources before using frozen funds, National faults them for failing to explain "what other resources he or she might have to pay her or his living expenses aside from their frozen retirement accounts." Doc 54 at 8. It invokes the "rule that a defendant seeking to unfreeze funds for living expenses must first use unencumbered funds," quoting *Dixon*'s requirement that a defendant show he cannot pay "from new or exempt assets." *Id.* at 9 (quoting *Dixon*, 835 F.2d at 565). And it proposes that, "if the Defendants are eventually permitted to access property they claim should be unfrozen—such as their retirement accounts," they must reimburse National "from the exempt property." *Id.* at 9–10.

National has thus told the Court three things about Chad's retirement accounts: they are "exempt property"; they are the kind of resource a defendant should use for living expenses before drawing on frozen funds; and they may be

released. That is Chad's position. It is not National's position in its other filings. In opposing Chad's motion to modify, National argued that 12 U.S.C. § 1787(b)(2)(G) overrides Mississippi's exemption altogether, regardless of traceability. Doc 48. And in its proposed Supplemental Memorandum, submitted several weeks after this motion, National argued that withdrawn retirement funds "will be subject to the asset freeze . . . the same as the funds in the Bridges' other accounts," that they "will become 're-frozen'" even if § 1787(b)(2)(G) does not reach the accounts, and that the Court therefore "need not decide" the § 1787 question at all. Doc 60-1 at 3, 5. Those positions cannot coexist with this motion. If withdrawn retirement funds were instantly re-frozen, there would be no "exempt" or "unencumbered" source for a defendant to use first, and National's own reimbursement proposal—which assumes Chad will have released retirement funds in hand from which to repay National—could never operate.

National's motion also confirms the limited basis on which it holds Chad's accounts. National asserts that some frozen assets are held in constructive trust, but it does not contend that Chad's IRA or MDC Plan is among them. Doc 54 at 10–11. As to assets "not held in constructive trust," National's stated interest is to "preserve a potential judgment." *Id.* at 11. That is a prejudgment attachment to secure an eventual money judgment—the very relief that, as to property exempt under Mississippi law and untraceable to any misappropriated funds, the Court should not maintain. And National acknowledges that modification of the injunction calls for the Court's traditional equitable balancing of harms, Doc 54 at 2–3, which confirms that

the Court retains its full discretion to tailor the freeze to property National can actually tie to the alleged misappropriation.

### B. The proposed "reimbursement" remedy is an attachment of exempt property by another name.

National asks the Court to order that, if Chad's retirement accounts are released, Chad must use them to "reimburse" National for any frozen funds he has used for living expenses. Doc 54 at 9–10. That request would accomplish indirectly what Mississippi law forbids directly. Section 85-3-1(e) exempts retirement assets and the monies payable from them "from seizure under execution or attachment," Miss. Code Ann. § 85-3-1(e), and the MDC Plan is exempt "from levy, garnishment, attachment or any other process whatsoever," Miss. Code Ann. § 25-14-5(2). An order directing Chad to turn released retirement funds over to National is "process" that seizes exempt property for a creditor's benefit before any judgment. Calling it "reimbursement" does not change what it is.

National is candid about the purpose of the request: it acknowledges that any "reimbursement" debt is not "likely to be collected in full," but says "the possibility of repayment should incentivize the Defendants to be discerning about their use of frozen funds." Doc 54 at 10. Equity does not impose a contingent debt on a defendant, payable from exempt property, as an incentive. If the Court believes any safeguard is needed, the appropriate tool is the one National also requests and Chad has offered as an interim measure: a transparent accounting.

### C. The Court should release Chad's IRA and MDC Plan.

For the reasons set out in Chad's motion, his Reply, and his proposed Supplemental Memorandum, Docs 37, 52, Chad's IRA and MDC Plan are exempt under Mississippi law and are funded exclusively by his own salary deferrals and rollovers from a prior employer's plan, years before National contends Leigh's misappropriation began. National has never identified a dollar in either account traceable to Leigh or to Jackson, and its present motion does not suggest otherwise. Under *Dixon*, defendants must be permitted "to demonstrate any legitimate claim they have to any of the assets that may have been frozen," 835 F.2d at 565, and Chad has done so. The Court should release the accounts, with at most the interim safeguards described below.

## III. Chad Has Met the *Dixon* Standard, and National's "Absolutely Necessary" Standard Is Not the Law.

### A. National concedes the facts that satisfy *Dixon*.

*Dixon* requires a defendant seeking the release of frozen funds to show that he cannot pay from "new or exempt assets." 835 F.2d at 565. National concedes that Chad lost his employment with the State, that his only income is unemployment benefits of $235 per week, and that "all of Chad Bridges' accounts are frozen." Doc 54 at 3–4. Chad was terminated on June 16, 2026, while the TRO was in effect. Doc 36-1 ¶ 3. The "exempt assets" he has are the retirement accounts National continues to hold. On National's own description of the record, Chad has made the showing *Dixon* requires. National's later assertion that Chad has not made the "threshold showing" *Dixon* requires, Doc 60-1 at 5, cannot be reconciled with these concessions.

National nonetheless asks the Court to prohibit any use of frozen funds until a Defendant proves the use is "absolutely necessary for non-luxurious living expenses." Doc 54 at 8. National cites no authority for an "absolute necessity" standard, and *Dixon* adopts none. *Dixon* speaks of "reasonable" fees and a reasonable allowance, and it cautions that "the court cannot assume the wrongdoing before judgment." 835 F.2d at 565. The out-of-circuit decisions National cites ask only whether a defendant has other sources of income and whether he seeks funds for "luxuries." Doc 54 at 7 (citing *SEC v. Heartland Grp. Ventures, LLC*, 2022 WL 1527542, at *5 (N.D. Tex. Mar. 18, 2022)). Chad has no other source of income beyond modest unemployment benefits, and he seeks funds for rent, utilities, food, insurance, and his defense—not luxuries.

**B. Chad has disclosed his expenditures, and he is willing to continue doing so.**

As an initial matter, National's complaint that it "has not received financial account statements from Chad . . . evidencing [his] expenditures," Doc 54 at 4, is moot. After National filed this motion, and before the October 16, 2026 settlement conference with the Magistrate Judge, Chad provided National's counsel with copies of the monthly bank statements for the checking account he has been using for his living expenses since May 2026. National therefore has the very records it says it lacks, and Chad has made full disclosure of his expenditures in compliance with the Preliminary Injunction. *See* Doc 20 ¶ 25; Doc 7 ¶¶ 10–11. National's request for "past . . . monthly account statements," Doc 54 at 10, has thus already been satisfied as to

Chad, and that aspect of National's motion should be denied as moot. Chad will continue to provide monthly statements going forward.

Although Chad does not agree that this requirement should be applied to his exempt retirement funds, as an interim measure, he is willing to abide by the accounting safeguards that were incorporated into the Preliminary Injunction for his employment income (which he no longer receives): any withdrawals from his IRA or MDC Plan will be deposited into a single designated account, used only for documented living expenses and attorney's fees, and reflected in monthly statements provided to National. That would give National complete visibility and preserves complete traceability, without the "absolutely necessary" standard or the "reimbursement" debt National proposes.[1]

### IV. Chad's Accrued Leave Is Earned Compensation That the Preliminary Injunction Already Permits Him to Use.

National objects that Chad "attempt[ed] to cashout his accrued leave" of 240 hours, worth $14,865.60, from his former employer, the Mississippi Insurance Department, and contends the leave is frozen property. Doc 54 at 5, 12–14. The leave is compensation Chad earned by working for the State. It is not traceable to Jackson or to Leigh. And it is salary in another form: the Preliminary Injunction expressly permits Chad to "use income derived from the salary of Chad Bridges during the pendency of this lawsuit . . . for basic living expenses." Doc 20 ¶ 25; *see* Doc 54 at 3. National itself argues that the Court's orders were designed to give the Bridges a

[1] As to Chad's living expenses ($2,900 rent), the undersigned has informed National's counsel that, unless he is given access to his retirement funds, he will not have the means to continue paying this amount and has proposed moving back into one of the Bridges' homes.

defined "allowance," Doc 54 at 13; Chad's salary *was* that allowance, and a payout of leave earned through the same employment falls within it.

National's suggestion of "possible concealment," Doc 54 at 14, is unfounded. Chad made the request through his employer, a State agency, which promptly informed National's counsel. *Id.* at 5. Nothing in the Preliminary Injunction required Chad to give National advance notice before receiving compensation from his employer. Nor would converting leave to cash "decrease the value of" any property, Doc 7 ¶ 8; Doc 20 ¶ 8: the payout is the full value of the leave. The Court should clarify that the leave payout may be deposited into Chad's designated account and used for living expenses, subject to the same monthly accounting.

## CONCLUSION

National's motion confirms that Chad has no income beyond modest unemployment benefits, that all of his accounts are frozen, that *Dixon* governs, and that his retirement accounts are exempt property that may be released. The Court should therefore (1) decide Chad's pending Motion to Dissolve and/or Modify Preliminary Injunction [Doc 36] before, or together with, National's motion; (2) deny National's request to prohibit Chad's use of funds for living expenses absent proof of "absolute necessity"; (3) deny National's request to require Chad to "reimburse" National from exempt retirement funds or any other source; (4) clarify that Chad's accrued-leave payout may be used for living expenses under Paragraph 25 of the Preliminary Injunction; (5) grant Chad's pending motion and release his IRA and MDC Plan from the freeze; and (6) to the extent the Court deems any interim

safeguard appropriate, limit it to Chad's depositing released funds into a designated account, used only for documented living expenses and attorney's fees, with monthly statements provided to National.

RESPECTFULLY SUBMITTED, this the 24th day of November, 2026.

**CHAD BRIDGES**

By: */s/ W. Thomas McCraney, III*
W. Thomas McCraney, III

**OF COUNSEL:**

W. Thomas McCraney, III (MS Bar No. 10171)
William M. Quin II (MS Bar No. 10834
Sean R. Guy (MS Bar No. 100362
W. Richard Newman, V (MSB # 107204)
**MCCRANEY MONTAGNET QUIN & NOBLE, PLLC**
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
tmccraney@mmqnlaw.com
wquin@mmqnlaw.com
sguy@mmqnlaw.com
rnewman@mmqnlaw.com

**CERTIFICATE OF SERVICE**

I do hereby certify that the foregoing pleading was filed electronically through the Court's CM/ECF system and served electronically on all parties enlisted to receive service electronically.

This the 24th day of November, 2026.

*/s/ W. Thomas McCraney, III*
W. Thomas McCraney, III